63b 215
8ap 7

## HUFF vs. WAGNER.

A *bona fide* holder of commercial paper to which, as between maker and payee, there is a good defence, is entitled to be protected only to the extent of the value which he has paid. MULLIN, P. J., dissented.

If the holder of such paper has paid but a part of the consideration or value of the property, he is only entitled to be considered as a *bona fide* purchaser *pro tanto*.

There is no reason for any distinction between the case of a purchaser for money, and one where the note is exchanged for property.

In an action upon a promissory note, brought by an indorsee, against the maker, the defendant set up as a defense, that the note was obtained from him, by the payee, by means of false and fraudulent representations made on the sale of a patent right; and gave evidence showing the fraud. The plaintiff claimed to be a *bona fide* holder of the note, for value, and introduced evidence tending to establish that fact. It appearing, by the plaintiff's evidence, that the consideration he gave for this and another note, purchased by him of the payee at the same time, was a span of horses, the defendant offered to show "that the property traded for the notes was not, at the time of the trade, worth more than half as much as the amount of the notes." This evidence was rejected as inadmissible, and the plaintiff obtained a verdict. *Held* that the evidence offered was improperly rejected, and that a new trial was properly granted by the special term, upon that ground.

*Held, also,* that the evidence was admissible, upon the ground that where the question is as to whether the plaintiff is a holder in good faith, all the circumstances of the transfer, and the relations and dealings between the parties, are admissible in evidence. That the fact that the plaintiff gave, in horses, but fifty cents on the dollar for the note of a perfectly responsible party, and within four days after the note was given, was a circumstance clearly admissible to be proved, on the question of good faith.

*Held, further,* that the evidence was not inadmissible because not pleaded; the fact that the note was obtained by fraud having been proved without objection, and the evidence rejected being upon the issue presented by the plaintiff in reply to the defense of fraud, and coming in by way of rejoinder to the plaintiff's reply.

APPEAL from an order setting aside a verdict rendered for the plaintiff at the Orleans county circuit, and ordering a new trial.

The following opinion was delivered at the special term, by the justice before whom the motion was made, upon exceptions taken at the trial:

DANIELS, J.   This action is on a promissory note, made by the defendant, on the 12th of July, 1869, by which he promised to pay to Phineas Strong, or bearer, the sum of $500, with interest, in three months after the date thereof. This note, the evidence showed, was procured from the defendant by a man named Ferguson, and when it was obtained by him, it was stated in the case, it was obtained by Ferguson by fraud.   By giving the effect to these terms which their import will fully justify, it must follow that Ferguson could not have recovered upon the notes against the defendant, for as between them he was entitled to avoid the note by reason of the fraud through which it was obtained; and as the defendant was not shown to have received anything of value from Ferguson, and consequently had nothing to return to entitle him to rescind, the proof of the fraud alone was sufficient to warrant that result.   It appeared upon the trial that the plaintiff bought four notes of Ferguson—the note in suit and one against Finch—on one day, for which he gave him a brown horse and brown mare, and two other notes on the following day, for which he gave him a pair of bay horses and running mare.   After the plaintiff had rested his case, and after it had appeared that the defendant's note had been procured by fraud, the defendant offered to prove that the property traded for these two notes was not worth more than half as much as the amount of the notes.   The plaintiff objected to the evidence, and the court held it to be inadmissible; to which ruling the defendant excepted. In support of this ruling the plaintiff's counsel claims that the terms (these two notes) included in the offer did not relate to the note in suit, and the other one purchased with it by the plaintiff, but as the terms on which the others were purchased was in no way involved in the issue on trial, and they were notes the defendant had no interest in, and was no way liable on, that construction of the offer cannot properly be adopted, particularly as no

such reason was specified in the objection to the admissibility of the evidence.

The terms mentioned must have been designated to refer to the note in suit, and the other one bought by the plaintiff with it at the same time, and in the same trade; and as so construed, the offer was to show that the defendant's note and the note against Finch, bought with it by the plaintiff, was recovered by him for property not worth more than half as much as the two notes. If the note in suit had been a valid obligation in Ferguson's favor against the defendant, this evidence would have been very clearly inadmissible; for he having a legal right to recover the full face of the obligation against the defendant, could have sold it for any price he deemed proper, or even given it away, and the debtor would have no right to complain of the disposition made of it. He would have been liable, in such a case, to the full extent of his promise, to any person acquiring title to the paper containing the evidence of it; but that was not its character in Ferguson's hands. The defendant could have avoided his liability on the ground of the fraud of the former, by means of which the note was obtained. This was sufficient to prevent him from transferring any better right to the vendee than he had himself, unless the latter received it in good faith, and for an actual consideration parted with for its consideration. It is the parting with value under such circumstances that the law endeavors to protect him for; hence where there is a writing, and for that reason no possible loss can occur to the purchaser by a failure to recover on the paper, he stands in no better relation than the person did from whom he received it, and consequently is not permitted to recover upon it. The reason of the rule would seem to be as cogent against him for the amount which the promised debt exceeds the amount paid for it. The holder held it under such circumstances that it could only be rendered a valid obligation against

the maker by. being transferred by the holder to a pur-
chaser, advancing value upon it in good faith. And as
the value gave it validity, it would appear to follow that
its validity, acquired from that source, could be no more
extended than the value actually received.]]

This was held by the chancellor to be the law,·in the
case of *Stalker* v. *McDonald*, (6 *Hill*, 93, 96.)   He came to
that conclusion under the general principles of equity ap-
plicable to the protection of *bona fide* purchasers, as well
as on the authority of *Edwards.* v. *Jones*, (7 *Carr. & Payne*,
633,) where the holder of a note for £100 was only per-
mitted to recover against the maker. the amount.paid for
it to the indorser, because it was not a valid obligation in
the hands of the latter against the maker.   The same
ruling was made under circumstances presenting ·this
point, in the cases of *Simpson* v. *Clarke*, (2 *Cromp., Mees. &
Rosc.* 343 ;) *Petly* v. *Hanmann*, (2 *Hump.* [*Tenn.*] 102 ;) *Hol-
man* v. *Hobson*, (8 *id.* 127, 129 ;) *Nash* v. *Brown*, (*Chitty on
Bills,.n. X., p.* 74, 10*th Am. ed.*)   And in effect it is sanc-
tioned by *Beaman* v. *Hess*, (13 *John.* 52.)  `Between such
parties, the consideration of the paper is open to examina-
tion and inquiry.

The holder of such paper, and paper made for the ac-
commodation of the holder, can recover nothing upon it
against the maker himself, and he can place no other per-
son in any better situation in that respect than himself,
unless the person receiving the paper from him`has so far
changed his position, upon its faith, as to render the prin-
ciple governing the case inapplicable to him on account
of the injustice it would otherwise produce.   For the pro-
tection.of such purchasers, the law permits the original
holder to transfer to the vendee such a right to recover
upon the paper as is required to indemnify him against
loss.   But neither the principle nor the justice of the rule
can require it to be extended any farther.   It would be
clearly unjust to allow the purchaser to make a profitable

speculation out of paper on which the maker can only be held liable for the purpose of affording him such a degree of protection as his reliance upon the appearance presented by it may indicate to be equitably necessary in order to save him from loss. Courts of equity, from which the legal rules affecting commercial paper in this respect are derived, do not extend their protection in favor of the purchaser, against the equities of others, beyond that limit, and no good reason can exist for rendering them more effective in a case like the present one.

The plaintiff should recover what he has advanced to the person from whom he received the paper on the faith of it, and he should recover no more than that, because it was not valid in the hands of the person from whom he received it, against the defendant, for anything. For that reason the evidence offered ought to have been received.

It is not necessary to consider whether the evidence proving the fraud was properly admissible under the state of the pleadings, for no objection was taken upon the trial. If any such objection could have been properly taken, it was waived by the omission to make any reference to it.

The verdict should be set aside, and a new trial ordered, with costs to abide the event.

*Holmes & Thompson,* for the appellant.

I. The refusal to charge as requested was correct. No fraud in obtaining the note having been alleged in the pleadings, the question of good or bad faith on the part of the plaintiff in purchasing the note could not properly be submitted to the jury. The only question for them to pass upon, under the pleadings, was, 1st. Did the defendant execute and deliver the note in question? 2d. Had the plaintiff legal title to the note? (*See point* **3**, *as to pleadings.*) Again; if properly raised by the pleadings, the refusal to charge was still correct for the following

reasons, viz: 1st. No evidence appears in the case warranting the jury to find such facts to exist, even though the law was as claimed. 2d. The rule of law is not as the counsel requested the court to charge. The counsel intended, no doubt, to invoke the rule once held in England, to wit: " That the title of the holder of negotiable paper would not be protected when it had been acquired under circumstances which ought to have excited the suspicion of a prudent and careful man." This is not the rule now in England. The true rule on this question in that country, as now settled, is as laid down by Lord Denman, C. J., in *Goodman* v. *Harvey*, (4 *Adol. & Ellis*, 870.) " The question I offered to submit to the jury was whether the plaintiff had been guilty of gross negligence or not. I believe that we are all of opinion that gross negligence only would not be a sufficient answer when the party has given consideration for the bill. Gross negligence may be evidence of *mala fides*, but it is not the same thing. We have shaken off the last remnants of the contrary doctrine. When the bill has passed to the plaintiff, without any proof of bad faith in him, there is no objection to his title." The rule, as above laid down, has ever since been followed in England. (*Uther* v. *Rich*, 10 *Adol. & Ellis*, 784. *Raphael* v. *Bank of England*, 33 *Eng. Law and Eq.* 276. *May* v. *Chapman*, 16 *Mees. & Wels.*, 355. *Chitty on Bills*, 257, 12th ed.) The same rule has been adopted in this country; and the decisions are uniform in regarding it as settled law. (*Goodman* v. *Simmonds*, 20 *How. U. S.*, 343. *Hall* v. *Wilson*, 16 *Barb.* 550 ; 30 *id.* 464. *Edwards on Bills*, 309. *Story on Bills*, § 416. *Story on Notes*, § 282. *Cothran* v. *Collins*, 29 *How.* 113. 2 *Parsons on Bills and Notes*.) In *Parsons on Bills*, last above referred to, after citing the authorities, the author says that the law is settled both in England and America as follows : " The title of such holder is not defeated by proof that he was negligent or grossly negligent in taking the note or bill, and

that he omitted to make inquiries which common prudence would have dictated."

II. The charge of the judge to the jury was not erroneous in any respect. There was no evidence given on the trial establishing *mala fides* in the plaintiff. The evidence did not show gross, or slight negligence, or even suspicious circumstances. The jury could not have been justified in finding there was bad faith on the part of the plaintiff, from the evidence in the case. The plaintiff kept a livery stable and dealt in horses. Ferguson was introduced to him by an acquaintance, and a business man in the village where they both resided, who knew he had horses to sell. Ferguson examined the horses the plaintiff had for sale, and ascertained the price the plaintiff asked for them. After this Ferguson wished to turn out notes for them. The plaintiff was unacquainted with the defendant and went into the street and inquired concerning his circumstances, and found him to be responsible, returned to the stable and agreed to take the notes for the horses. It was an ordinary transaction, conducted in the ordinary manner. At the time these notes were purchased, fraudulent patent right notes had not become as notorious as since, and still there are very few men in the different towns of our county that have ever heard of them. The suit by Foster on a patent right note, spoken of in the plaintiff's evidence, was tried after the plaintiff purchased this note, at a circuit held in Orleans county, and was the first case on a patent right note tried in the county, and in this case the plaintiff recovered on the note. The plaintiff swears that he had not heard there was trouble about patent right notes in Orleans county, and had heard nothing about these notes before purchasing them. On the question of *mala fides* there was absolutely nothing to go to the jury, and the charge of the judge was eminently proper. Justice DANIELS, in his opinion, holds that the plaintiff is a *bona fide* holder and

entitled to protection. Again; the question was not raised by the pleadings, as stated in our first point.

III. The defendant offered to prove, " that the property traded for these two notes was not worth more than half as much as the amount of the notes." This was objected to, and by the court excluded; to which the defendant excepted. 1. This was an action at law, and no claims for equity was set up in the answer. The answer was a specific denial, according to section 249 of the Code. The answer must contain, first, a general or specific denial of each material allegation of the complaints, controverted by the defendant, &c.; second, a statement of any new matter constituting a defense. The question then is, whether the defense offered consisted of new matter, or whether it merely disproved any of the material allegations of the complaint. We say, that by the pleadings all evidence offered, giving effect to a defense of fraud, was new matter, and was properly rejected, and until the answer was amended, any evidence introduced upon that subject must be regarded as immaterial. And the plaintiff had a right to oppose its introduction at any stage of the trial. If the evidence of fraud, in this case, has been incidentally admitted in an attempt to prove that the defendant never gave that particular note, or had been admitted otherwise, short of an amendment of the answer—the plaintiff's case would still have been unaffected—unless the proof offered had been admitted and became a part of the case. The plaintiff here, for the first time, had an opportunity to object to this class of evidence. In short, the same right that the plaintiff had to object to the whole defense of fraud, authorizes him to object to any part of it, or to any evidence bearing upon that question, not necessary to sustain the denial of the allegations of the complaint. (*See remarks of Jewett, Ch. J. in Ferguson, adm'r, v. Ferguson,* 2 *N. Y.* 360.) Also his remarks in *Kelsey* v. *Western, Id.* 501, 506.) In the case of *Bailey* v. *Ryder,* (10 *N. Y.*

Huff *v.* Wagner.

363,) it is held " that no decree can be made in favor of a
complainant on grounds not stated in his bill. Also that
in proceedings in equity, if fraud is not alleged in the
pleadings, no proof of it can be properly received." The
court further says: " He (the complainant) should have
amended his bill, and stated the facts on which he meant
to impeach it. The defendants would have been required
to answer such facts, and if denied, it would then have been
competent to have supported the allegations by proof."
(*Citing the case in* 2 *N. Y. above referred to.*) *See, also,*
*Richtmeyer* v. *Remson,* (38 *N. Y.* 206.) 2. Had the defend-
ant alleged fraud, in his answer, the plaintiff might have
well supposed that the question of his being a *bona fide*
holder, would have arisen, and he could have been called
upon to meet any defense consequent to that defense. As
it was, the defendant was taken by surprise, and without
witnesses to litigate the value of the property he gave in
exchange for the note in suit, as well as the note not in suit.
He would also have had the right to show, by witnesses,
that the other note was worthless. Had the defendant,
upon a discovery, at the trial, that the element of fraud
was in the case, amended his answer, the plaintiff would
have been allowed sufficient time to obtain witnesses, and
prepare to defend the new issue. He would also have
been allowed his costs of the circuit. 3. Justice DANIELS,
who decided this case at special term, says, in regard to
this question of the pleadings: " It is not necessary to
consider whether the evidence proving the fraud was prop-
erly admissible under the state of the pleadings, for no
objection was taken upon the trial. If any such objection
could have been properly taken, it was waived by the
omission to make any reference to it." If the learned
justice referred to this offer, we submit that it was ob-
jected to upon all grounds that could have been specified.
The objection being general, the court sustaining the
objection, is presumed to have decided upon all the

grounds by which it could have been excluded. In the case of *Streety* v. *Wood*, (15 *Barb.* 105,) the court states the law to be as follows, viz: "When evidence offered is objected to and excluded, and neither the grounds of objection, nor the object of the proof is stated, and the court can see that a good objection might have been taken, it will presume that the proper objection was taken, and the decision made upon that ground." It must be regarded then, that the plaintiff objected to this evidence, on the ground, among other things, that it was inadmissible under the pleadings, and that the plaintiff, by reason of not being notified by the defendant's answer of this defense, was not prepared to meet it. He had already shown that the defendant gave the note in suit, and that he—the plaintiff—had the legal title. When he had done this, the issues in the case had been disposed of, and everything else became and was entirely immaterial. 4. The plaintiff being a *bona fide* purchaser for value, and in good faith, was entitled to recover against the maker the full amount of the note; and the rule invoked by the learned justice at special term, has no application to this case. In an action by an indorsee against his immediate indorser, it is settled that the consideration paid on the transfer, and interest thereon, is the measure of damages, but the application of this rule, as between the *bona fide* purchaser and the maker, has never been established as the law in this State, as we contend. In *Stalker* v. *McDonald*, (6 *Hill*, 93,) the only point decided is, that the holder of a note, transferred as collateral security for an antecedent debt, is not entitled to protection as a *bona fide* holder for a valuable consideration. It was said by the chancellor in that case—not "held," because no such question was before the court— that "It has been uniformly held by the courts of equity in such cases that the purchaser who has obtained the legal title as a mere security or payment of a preëxisting debt, without parting with anything of value, is not en-

titled to hold the property as against the prior equitable owner; and if he has paid but a part of the consideration, or value of the property, he is only entitled to be considered as 'a *bona fide* purchaser *pro tanto.*" By this language we claim the chancellor only intended to assert that when a note had been taken, partly as security for, or in payment of, a preëxisting debt, and partly for cash or other valuable consideration, he was owner only of that portion of the note for which he paid value, and was not the owner as to the residue, as against the true equitable owner of the note. In *Braman* v. *Hess,* (13 *John.* 52,) the point passed upon is, that as between the indorsee and his immediate indorser, the consideration of the transfer may be inquired into, and the amount to be recovered by the indorsee against his immediate indorser is only the amount paid, with interest. The court, in that case, says: "If this suit was by the indorsee against the maker of the note, it would not lie in his mouth to say the plaintiff purchased it at a discount." In *Cardwell* v. *Hicks,* (13 *How.* 281,) the same circumstances existed as in the case supposed by Chancellor Walworth, in *Stalker* v. *McDonald,* above cited. The note had been turned out to the plaintiff partly in payment and extinguishment of a preëxisting debt, and the balance had been paid in money by the purchaser. The court held he was not a *bona fide* purchaser for value as to so much of the note as was received on his antecedent debt, and that the defense of the maker was good to that amount. This is not the law now, at all events, and when made, the decision was really placed upon the ground that he was not owner of only that part of the note for which he had paid value. In *Edwards* v. *Jones,* (7 *Carr. & P.* 633,) cited by Justice DANIELS, the case was decided on the pleadings, and by the pleadings the plaintiff only claimed the amount he paid for the note. This question was not discussed, and was not passed upon in any other manner than as being all claimed by the plaintiff. In

*Russell* v. *Ball,* (3 *John. Ch.* 91,) the question was, whether the maker could be permitted to impeach the note by showing that it was fraudulently obtained, and without showing that the indorsee was not a fair and *bona fide* holder for a valuable consideration. The court held, that in such case the maker is never permitted to go into the real consideration of the note, unless it be such as to render it void by statute, or unless it had become due before it was transferred. In *Gould* v. *Segee,* (5 *Duer,* 260,) the note was transferred partly in payment of a precedent debt, and partly for money paid at the time. The court says, Duer, J.: "But had there been no other consideration proved for the transfer of the note, than the payment in money that was made by Palmer, we are not to be understood as intimating that the plaintiff would not be entitled to recover. When, in cases like the present, a parting with value is proved, the amount of the consideration is not otherwise important than as bearing on the question of actual or constructive notice." This authority is cited approvingly by Justice Hogeboom, in his opinion in *Essex Co. Bank* v. *Russell,* (29 *N. Y.* 673.) *Park Bank* v. *Watson,* (42 *id.* 490,) is directly in point. It was alleged that the note had been fraudulently diverted. The plaintiff took the notes as collateral security for the note of the holder, for which he held other notes as security, which notes he surrendered. One of the notes surrendered, for $1180, was against an irresponsible party. The counsel for the defense requested the court to charge that the plaintiff could not recover for any amount beyond that which remained after deducting the worthless note. The court refused, and the counsel excepted. The Court of Appeals, Lott, J., sustained the refusal, and held that the plaintiff was entitled to recover the full amount of the notes. 5. We now come to the case at bar. The court will notice that this is not such a case as is contemplated by the cases heretofore cited. The value parted with was

Huff *v.* Wagner.

property consisting of two horses, a running mare, a harness and a carriage. A debt was created between Ferguson and the plaintiff, which was extinguished at the same time. (16 *Peters,* 20.) The plaintiff set a price upon his property, and made a special contract in regard to the same. The question here then, is, whether it is the law that special contracts, made by the purchaser in good faith, can be set aside and a jury determine as to how much he should be allowed in the premises, or for the property he has parted with, and which cannot be restored. We submit that this is not the law. Such a doctrine would, to a great extent, destroy the benefits intended to be derived from the commerce of negotiable paper. The law is well settled that as between a maker and payee, although there was not adequate consideration for the whole amount of the instrument, yet as it could not be readily shown to the jury to what precise extent the consideration had failed, the plaintiff was entitled to recover the whole. It is said in *Chitty on Bills,* 76, 10 *Am. ed.* : "And it seems to be an established doctrine, that the partial failure of consideration will constitute no defense if the *quantum* to be deducted on that account be *unliquidated,* and not in the nature of a certain debt or deduction." "Thus, if a bill be given for the price of goods, it has been held to be no ground of defense to a part that the price of goods was exorbitant," &c. (*See also Washburn* v. *Picot,* 3 *Dev.* 390.) If the payee is not subjected to this defense, it is difficult to see why the *bona fide* purchaser from the payee should be. The same reason which holds good in the one case is equally good in the other. We submit that the *bona fide* parting with property for a note or bill is a parting with value, sufficient to make the purchaser a *bona fide* holder to the whole extent of the bill. 6. The offer embraced too much. It should have been confined to the value of the note, and not to the nominal amount. Equity would call for the cash value of the notes on the one side,

as well as the cash value of the property on the other. 7. The offer should have been confined to the note in suit. The plaintiff could not be compelled to litigate questions arising upon the other note, in this action. To prove the offer as made would not have established any certain fact in regard to this note.

*Geo. Bullard,* for the respondent.

I. The note originated in fraud, and the plaintiff cannot recover upon it unless he obtained it in the usual course of business, in good faith, and for full value. (*Magee* v. *Badger,* 34 *N. Y.* 247. *Belmont Branch Bank* v. *Hoge,* 35 *id.* 65. *Hall* v. *Wilson,* 16 *Barb.* 548. *Miller* v. *Race,* 1 *Burrow,* 458.) The evidence rejected was competent to limit the amount of the recovery, even if the plaintiff acted in good faith. It is not necessary to sustain the credit or circulation of negotiable notes, that the plaintiff should be allowed to speculate in fraud at the expense of the defendant. He is abundantly protected by giving him the value of what he innocently advanced on the faith of the paper. And the cases hold that he can recover no more. (*Story on Promissory Notes,* § 191. *Stalker* v. *McDonald,* 6 *Hill,* 93. *Williams* v. *Smith,* 2 *id.* 301. *Cardwell* v. *Hicks,* 37 *Barb.* 458. *Youngs* v. *Lee,* 18 *id.* 189; *affirmed* 12 *N. Y.* 552.) Judge DANIELS granted a new trial upon this ground. The fact that a note against a responsible farmer, with less than three months to run, is offered in exchange for property at twice its value, is evidence of some infirmity in the note. Men do not make such trades, in the ordinary course of business. Nor was it any part of the plaintiff's business to deal in notes, and buying $1250 worth of this kind, of a perfect stranger, was not only an unusual and extraordinary transaction, but was entirely outside of his business. The evidence offered, together with that already in the case, would have justified the jury in finding that the plaintiff did not get

the note, either in good faith or in the ordinary course of trade. (*Wilcox* v. *Howell*, 44 *Barb.* 396.   1 *Pars. on Bills and Notes*, 259).

II. Proof of fraud in the note created a presumption against the plaintiff, which he was bound to rebut, by showing affirmatively that he obtained it in good faith, for full value, and in the ordinary course of trade. The judge committed an error in refusing to charge in accordance with this rule of law. (2 *Greenl. on Ev.* § 172. *Potter* v. *Chadsey*, 16 *Abb.* 146.   5 *Pick.* 412.   *Catlin* v. *Hansen*, 1 *Duer*, 322. *First National Bank* v. *Green*, 43 *N. Y.* 298.)

III. Some defense to a note must always be established before the question of good faith arises, as the only object of showing good faith is to cut off such defense as may be proved.   And a defense to the note must, therefore, in all cases, become an element, whenever the question of good faith is considered.   Judge ALLEN says, in *Hall* v. *Wilson*, (16 *Barb.* 535:) "Although the defense of usury is not alleged in the answer, and cannot, therefore, be relied upon by itself as a defense to the action, it may be alleged in impeachment of the good faith of Bigelow; and being established, takes away all pretense of the *bona fides* of the transaction."   The evidence of fraud was received without objection on the trial, and referred to by the judge in his charge.   If the objection had then been raised, it might have been obviated by an amendment of the pleadings. (*Barnes* v. *Perine*, 2 *Kern.* 18.)

TALCOTT, J. This is an action on a promissory note made by the defendant and delivered to one Ferguson. The defendant claimed that the note was obtained from him by Ferguson, by means of false and fraudulent representations made on the sale of a patent right, and the case states that "the defendant gave evidence showing that Ferguson obtained the note from him by fraud." The plaintiff claimed to be a *bona fide* holder of the note for

value, and gave evidence tending to establish such fact. It appeared, by the plaintiff's evidence, that the consideration he gave for this and another note purchased by him of Ferguson, at the same time, was a span of horses. After this evidence, the defendant offered to show "that the property traded for the notes was not, at the time of the trade, worth more than half as much as the amount of the notes." This evidence, being objected to by the plaintiff, was held by the court to be inadmissible; to which decision the defendant excepted.

The plaintiff had a verdict, under the instruction of the court, that he was a *bona fide* holder, and was entitled to recover on the note, notwithstanding the fraud practiced by Ferguson in obtaining the note. The special term granted a new trial upon the exception to the ruling as to the admission of the evidence, and upon the principle that a *bona fide* holder of commercial paper, to which, as between maker and payee, there is a good defense, is entitled to be protected only to the extent of the value which he has paid. This, I think, is correct. The protection of the holder for value in such cases, as in other cases where the law protects *bona fide* purchasers against latent claims, is founded upon the idea of protecting such *bona fide* purchaser for value against any possible loss. And this is the precise reason why a *bona fide* holder of such paper, which has been transferred to him to secure an antecedent debt, cannot recover against the party who has been defrauded; namely, that he has lost nothing by his reliance upon the face of the paper.

These principles are discussed and laid down in a very elaborate opinion of the late chancellor, delivered in the court of errors in the leading case of *Stalker* v. *McDonald,* (6 *Hill,* 93,) in which he expressly holds that if the holder of such paper has paid but a part of the consideration or value of the property, he is only entitled to be considered as a *bona fide* purchaser *pro tanto,* and refers with appro-

bation to the case of *Edwards* v. *Jones*, (7 *Carr. & P.* 633,) in which, in an action on a note for £100, the consideration of which was impeached by a plea, the plaintiff replied that it was indorsed to him for the consideration of £49. And he was only permitted to recover the £49 advance.

The proposition sought to be maintained by the counsel for the appellant in this case, namely, that whatever may have been the consideration of the transfer of a negotiable note, if it was a valuable one, the holder without notice of the invalidity of the note, may recover the entire face thereof, without reference to the amount paid by him for it, would produce most unjust and startling results. It would enable the holder of a stolen note for $1000 to recover the entire amount thereof from the maker, from whom it had been stolen, although the holder had purchased the same without notice, for only $100—a result revolting to common sense, and going far beyond affording that protection which public policy requires should be extended to parties who purchase negotiable paper for value. I see no reason for any distinction between the case of a purchaser for money, and one where the note is exchanged for property. If such a distinction could be made, the maker of the note could have no protection. Such notes would then be used in the purchase of property, as in this case, instead of sold for money. The purchaser is fully protected against loss by being enabled to recover the full value of the property parted with on the purchase.

The doctrine laid down in *Stalker* v. *McDonald* was also expressly held in *Williams* v. *Smith*, (2 *Hill*, 301,) and in *Youngs* v. *Lee*, (18 *Barb.* 189;) in which Mr. Justice Welles, delivering the opinion of the court, says: "It follows that the plaintiffs are *bona fide* purchasers and holders of the note upon which the action is brought, and entitled to recover from the indorsers the amount they paid for it, with interest, *and no more.*" The case of *Young* v. *Lee* was

affirmed on appeal. (2 *Kern.* 534.) The same principle was also asserted in *Cardwell* v. *Hicks*, (37 *Barb.* 458.) The truth is, that in such cases the holder, except so far as he has parted with value, has no equity superior to that of the party defrauded. There. is a remarkable silence on this precise point, in most of the elementary works I have examined. It is, however, explicitly laid down in *Story on Bills*, (§ 188,) that where a bill has been obtained by fraud, a *bona fide* holder can only recover the amount he has advanced. The English cases, where a question of this character appears to have been presented, appear, generally, to have been between the *bona fide* holder and the accommodation maker or indorser; and in such cases it has always been ruled that the holder only recovers the amount of his advances. (*See Chitty on Bills*, 81. *Nash* v. *Brown*, *Id.* 85, *note* 1. *Wiffen* v. *Roberts*, 1 *Esp.* 261. *Jones* v. *Hunt*, 2 *Stark.* 304. *Simpson* v. *Clarke*, 2 *Cromp.*, *Mees. & Rosc.* 343.)

I do not perceive any reason why a *bona fide* holder for value may not recover the full face of the note, without regard to the amount he has advanced, as well where he sues a mere accommodation maker, as where he sues one from whom the note has been obtained by fraud. In either case the amount of the recovery is limited to the amount advanced by the holder, because there was no sufficient valid and valuable consideration for the making of the note, and the right to recover at all, grows out of the advance which has been made by the holder, which gives it validity in his hands to that extent. I think the discussions and opinions in the English cases show that this point has not been considered debatable, where the note was obtained by false and fraudulent representations. Indeed I think that until quite recently it has been assumed at *nisi prius*, in this State, that a holder of such paper for value, and without notice, was entitled to be protected to the extent of his advances, and no more. The point has

been expressly decided in *Holman* v. *Hobson*, (8 *Humphrey*, [*Tenn. R.*,] 127,) and in *Bettarue* v. *McCrary*, (8 *Georgia*, 114.)

It is claimed, by the counsel for the respondent, that the case of the *Essex County Bank* v. *Russell*, (29 *N. Y.* 673,) countenances the doctrine maintained by him. There a bank had discounted or purchased a note which was diverted, and gave as the proceeds of the discount, a part in cash and the balance in a note held by it, made by one Brewster and indorsed by other parties, which was past due and under protest. The bank was allowed to recover the whole amount of the diverted note, on the ground that it was a *bona fide* holder for value, and upon the express ground that the Brewster note, which constituted a part of the consideration on the purchase, although under protest, was worth its nominal amount, and was good and collectable. And the principle laid down in *Stalker* v. *McDonald*, on this point, seems to have been expressly recognized as the law. Mr. Justice Hogeboom says, speaking of the plaintiffs, (the bank,) "they were, therefore, on discounting this note, *bona fide holders* of it for value, *at least to the extent of the sum advanced in cash, on the discount; and to that extent, at all events, they would be entitled to recover in this action,* * * * it becomes necessary to determine whether the plaintiffs are *bona fide* holders of the note in suit, in such a sense as to exclude the defense of its misapplication, so far as respects that part of the discount which was appropriated to the purchase of the Brewster paper. *There was no want of consideration on the part of the plaintiff to the full amount of the note in suit, in the transaction in question. The Brewster note was, though over due, good and collectable paper. It was worth its nominal amount, and was collectable for two years afterwards.* It was a chose in action which the plaintiffs had a right to sell and transfer to Comstock. To the full extent of its value, it was a valuable consideration."

The case of the *Park Bank* v. *Watson*, (42 *N. Y.* 490,) is

claimed by the counsel for the appellant to have overruled the former cases on the subject, and to have established the doctrine for which he contends. In that case, the Park Bank had surrendered notes held as collateral security for a debt due it, on receiving the notes in suit, which proved to have been diverted. One of the notes surrendered was the note of Thomas Parks, shown on the trial to be irresponsible. The defendant's counsel had requested the court to charge, "that the plaintiff cannot recover for any amount beyond that which remained after deducting the Parks note." The request being refused, an exception was taken. The only opinion in the case is that of Judge LOTT, who says: "The surrender of those notes, under the decision in *Brown* v. *Leavitt,* (31 *N. Y.* 113,) and the cases there cited, made the bank a holder for value, and entitled it to recover the full amount claimed in those actions, without deducting the amount of the note of Parks."

The question in *Brown* v. *Leavitt* was simply whether the surrender and delivery up to the debtor of an existing note, and receiving another in payment of it, constituted a valuable consideration within the meaning of the rule which protects a *bona fide* purchaser for value against defenses existing between prior parties; and neither in that case, nor in any one of the cases there cited, was any question presented like that in the case at bar; unless it be in the cases of *Stalker* v. *McDonald,* and *Youngs* v. *Lee,* (*supra,*) in which cases the doctrine laid down was, as we have seen, directly contrary to the position of the appellant here. I have looked into the original points and case, on the argument in the Court of Appeals of *The Park Bank* v. *Watson,* and find that it was claimed there by the plaintiff that, notwithstanding the evidence touching the irresponsibility of Parks, the maker of one of the notes surrendered, his note was nevertheless of value, and would probably have been paid. It cannot be affirmed that a

Huff *v.* Wagner.

particular note of a party, shown to be of the character and in the position such as that of Parks, is wholly value-less. Now the request of the counsel for the defendant in that case was, that the judge charge that the entire amount of the Parks note must be deducted from any recovery. Upon well settled practice, this request was too broad, as the note of Parks had some value, and an excep-tion to the refusal to charge as requested was therefore unavailable, and the remark of Justice Lott, which has been quoted, so far as it is supposed to countenance the idea that the holder of negotiable paper, in good faith, for value, to which there is a defense as against the party from whom the holder received it, may recover the full face of the paper, without regard to the amount he has paid for it, if not inadvertent, was at least unnecessary to the decision, and wholly unsupported by the authorities on which it is supposed to have been placed. We think, therefore, that the evidence rejected was admissible, upon the ground taken by Mr. Justice DANIELS in the opinion delivered by him at the special term.

But we think the evidence was also admissible upon another ground. Where the question is as to whether the plaintiff is a holder in good faith, all the circumstances of the transfer, and the relations and dealings between the parties are admissible in evidence.

The price paid upon the purchase is one of those cir-cumstances, and usually a most material one. The other evidence in the case tended to cast some suspicion on the *bona fides* of the plaintiff's holding; and we think that the fact that the plaintiff gave in horses, but fifty cents on the dollar, for the note of a perfectly responsible party, and within four days after the note was given, was a cir-cumstance clearly admissible to be proved on the question of good faith. Direct notice cannot usually be proved. Fraud, or want of good faith, is usually to be inferred from circumstances.

The plaintiff's counsel insists that the evidence rejected was inadmissible because not pleaded. It was not requisite that it should be pleaded. The fact that the note was obtained by fraud from the defendant, by Ferguson, had been proved, without objection. The evidence rejected was upon the issue presented by the plaintiff in reply to the defense of fraud in obtaining the note, and came in by way of rejoinder to the plaintiff's reply.

The order, setting aside the verdict and granting a new trial, should be affirmed.

JOHNSON, J., concurred.

MULLIN, P. J. I concur with my brethren in the conclusion that there should be a new trial in this case, on the ground that the evidence of the value of the horse was competent upon the question of the *bona fides* of the plaintiff's purchase of the note. But until the case of the *Park Bank* v. *Watson* (42 *N. Y.* 490) is reversed, I cannot agree that the plaintiff, being a *bona fide* holder, was entitled to recover only the value of the horses.

Order granting a new trial affirmed.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, June 4, 1872. *Mullin, Johnson* and *Talcott,* Justices.]