WILLIAM R. GOULD and WILLIAM S. GOULD, Respond-
ents, *v.* THE FARMERS' LOAN & TRUST COMPANY,
Appellant, Impleaded with others.

*Wonderful conversion of securities by pledgee—a purchaser can only hold them to*
*the extent of his actual advances —when a pledgee may sue for their recovery.*

On December 29, 1877, the plaintiffs, with whom certain stocks and bonds had
been deposited to secure loans, pledged the same to Bonner & Co., to secure
a loan made by them to the plaintiffs.   On the same day Bonner & Co.
pledged the same, with other securities, to a trust company, to secure a loan
of $35,000 made by the company to them.   Other loans were then due
from Bonner & Co. to the trust company, which were secured by the de-
posit of collateral securities, which were held under a general agreement
that any surplus upon one loan might be applied to any deficiency arising
on another.   Bonner & Co. having failed, the plaintiffs, upon applying for
their securities, were compelled, by duress, to pay to the trust company
their full market value    Upon a sale of the other securities, held as col-
lateral to the $35,000, there was a surplus of $1,00, although the value
of all the securities held by the trust company was not equal to the amount
of the loans.
In an action by the plaintiffs to recover the said surplus. *Held*, that as against
the plaintiffs the trust company was bound to apply all other securities held
by it as collateral to the $35,000 loan, to the payment thereof, before
resorting to those of the plaintiffs; and that only so much of the latter
could be sold as should be necessary to fully pay that loan.
That the fact that the securities in question did not belong to the plaintiffs
did not prevent them from maintaining the action, as they had discharged
their whole duty to the owners and pledgors of the securities by recovering
possession thereof, thus putting themselves in a position to re-deliver them
on demand.
That the plaintiffs were entitled to recover.

Appeal from a judgment in favor of the plaintiffs, entered upon
the trial of this action at Special Term.

On December 29, 1877, the plaintiffs borrowed from John Bon-
ner & Co. $15,000, on the pledge of one hundred shares of Chicago
& Alton Railroad stock, and $10,000 in Government bonds, the
property of other persons, customers of the plaintiffs.   On the
same day John Bonner & Co. borrowed from the Farmers' Loan
& Trust Company $35,000, on the pledge of the plaintiffs' stock
and bonds, and also of other securities belonging to other defend-
ants in this action, who do not appeal.   On January 4, 1878, the

plaintiffs, finding that these securities were hypothecated to the Farmers' Loan & Trust Company, who would not surrender them without receiving the market value thereof, which was $18,411.25, paid that amount to the company under duress, that sum being $3,400 more than was due from the plaintiffs to John Bonner & Co. The Farmers' Loan & Trust Company obtained at the same time, from the sale of the other securities, about $18,000, leaving in its hands a surplus upon this particular loan of $1,655. By consent of all parties interested in this surplus it is to be paid to the plaintiffs, if the Farmers' Loan & Trust Company is not entitled to it. That company, however, claims the right to retain this surplus, on the ground of an alleged agreement between itself and John Bonner & Co., that all loans made by the company to Bonner & Co., and all securities pledged by Bonner & Co. to the company, were to be aggregated, and the surplus upon one loan applied to any deficiency which might arise upon another. Before making the loan of $35,000, the company had loaned to Bonner & Co. a separate sum of $20,000, upon the pledge of certain securities, which, being sold, left a deficiency of $3,300, which sum is still due from Bonner & Co. to the company upon that particular loan.

It appeared that the stock and bonds which were pledged by the plaintiffs to John Bonner & Co. were the property of other persons, customers of the plaintiffs, who had pledged them to the plaintiffs as security for advances. The Farmers' Loan & Trust Company thereupon insisted that the plaintiffs were not the real parties in interest, and also that, even if they were, the company was entitled to aggregate all the loans and the securities of Bonner & Co., and set off against the surplus of $1,600 on the loan for which the plaintiffs' securities were pledged, a deficiency of $3,300 upon the other loan.

The court below overruled both of these claims, and gave judgment in favor of the plaintiffs for the surplus upon the single loan for which the plaintiffs' securities were pledged; and it is from this judgment that the Farmers' Loan & Trust Company appeals.

*Turner, Lee & McClure*, for the appellant.

*Shearman & Sterling*, for the respondents.

PER CURIAM:

The plaintiffs had sufficient authority to pledge both the Chicago & Alton Railroad stock and the $10,000 in Government bonds as security for the loan of $15,000 made to them by John Bonner & Co. The subsequent pledging of the same stock and bonds by John Bonner & Co. to the appellants, having been made without notice of any title, right or interest of the plaintiffs in said bonds and securities, entitled the appellants to hold the same, as against the plaintiffs, to the extent of their actual advances upon them. The court below has found, as matter of fact, that said stock and bonds were pledged by Bonner & Co. to the appellants as collateral to a loan of $35,000, and not to one of $55,000; or, in other words, that the two loans made on the same day by the appellants to Bonner & Co., of $20,000 and of $35,000, were separate and independent transactions, each complete in itself, although they occurred within a brief space of time, and although it was understood when the thirty-five-thousand-dollar loan was made that the securities then pledged might also be held for any deficiency in the securities pledged for the twenty-thousand-dollar loan.

It is well settled, upon abundant authority, that Bonner & Co., being only pledgees of the stocks and bonds of the plaintiffs, could transfer no greater interest than they themselves possessed to any other person, except for value paid in good faith; and that a transfer of them, as security for a prior indebtedness of Bonner & Co., is not one for value within the meaning of the law. (*Weaver* v. *Barden*, 49 N. Y., 286; *McNeil* v. *Tenth National Bank*, 46 Id., 325; *Huff* v. *Wagner*, 63 Barb., 215; *Cardwell* v. *Hicks*, 37 Id., 458; *Coddington* v. *Bay*, 20 Johns., 637; *Stalker* v. *McDonald*, 6 Hill, 93; *Lawrence* v. *Clark*, 36 N. Y., 128; *Muller* v. *Pondir*, 55 Id., 325; *Chrysler* v. *Renois*, 43 Id., 209; *American Exchange Bank* v. *Corliss*, 46 Barb., 19.)

The interest of Bonner & Co. in the bonds and stocks was the amount of the fifteen-thousand-dollar loan, and such interest as might accrue thereon. To that extent they could transfer the pledge to the appellants without any question of right or power. But when the appellants came to claim a greater interest than that, it was necessary that they should be

able to show actual advances of a valuable consideration, made in good faith. For the loan of $35,000, the appellants held, in addition to the stocks and bonds in question, other securities of John Bonner & Co., which it appears produced enough, with the $18,411.25, received from the plaintiffs as the market value of their stocks and bonds, to repay the full amount of the thirty-five-thousand-dollar loan, and interest, and leave a surplus in their hands of $1,615.11, in excess of all that was due to the appellants on the thirty-five-thousand-dollar loan. The question in the case is, to whom that surplus belongs. The appellants claim that it belongs to them, by reason of an agreement, expressed or implied, between themselves and Bonner & Co., which authorizes them to apply such excess upon any deficiency in the collaterals of the former loans made by them. But this claim cannot be maintained, because, as we have already seen, however clear the agreement may have been, as between the appellants and Bonner & Co., and however plain their rights as against that firm, may be they are subordinate to the superior right of the plaintiffs. The appellants were bound to apply first upon the thirty-five-thousand-dollar loan the proceeds of the other collaterals deposited with them by Bonner & Co. for this particular loan, and then so much of the value received for the stocks and bonds of the plaintiffs as would fully pay that loan. This would be the case had the plaintiffs' securities remained in the hands of the appellants and been sold for the purpose of applying the proceeds to the payment of the loan. But they were not so sold. The plaintiffs paid their full market value in money to obtain possession of them from the appellants; and it is claimed that such payment was a voluntary one, operating as an acknowledgment of the right of the appellants to receive and apply upon the loan the full value of those stocks and bonds. The court has found, however, that the payment of such value by plaintiffs was involuntary and made by duress, under such circumstances as entitles them to recover the excess beyond what the appellants could legally have held. The evidence upon which the court has found this fact, though not very clear or decisive, brings the case, we think, within the authorities. (*Harmony* v. *Bingham*, 12 N. Y., 99 ; *Stinton* v. *Jerome*, 54 Id., 480.) The plaintiffs did not

acknowledge the appellants' right to be the full value of the property, because the appellants refused to surrender the securities upon any smaller payment; and this was held sufficient, in the cases above cited, to establish a compulsory payment, entitling the party to recover back the excess demanded.

It is insisted, however, by the appellants, that the plaintiffs do not show any title to recover this money, because the bonds and stocks pledged by them to Bonner & Co. were, in fact, the property of other parties, who were plaintiffs' customers, and who had left the same in the plaintiffs' hand as collateral to their obligations. But this question ceases to be of any importance in the case, when we consider that the action is not brought to recover the bonds and stocks, but only an excess in money which the plaintiffs were obliged to pay to the appellants, in order to get possession of them. The relations of the owners of the stocks and bonds, who had pledged them to the plaintiffs, were fully satisfied when the plaintiffs recovered possession of them, as they did by paying their full value to the appellants; and such owners had no interest whatever in the question of how much or how little the plaintiffs were obliged to pay to regain such possession. The plaintiffs discharged their whole duty in relation to the stocks and bonds to such owners, when they put themselves again in position to re-deliver them on demand, and on payment of any indebtedness for which they were entitled to hold them. It was the plaintiffs' own money that was paid in order to redeem the securities from the appellants; and, if they were obliged to pay any greater sum to accomplish that purpose than the appellants were lawfully entitled to claim, the right to recover the same was altogether the property of the defendants themselves.

We think there is no question, therefore, that if any action will lie for the excess realized by the appellant out of the collaterals for the thirty-five-thousand-dollar bond, it belongs altogether, both in law and equity, to the plaintiffs alone.

We are satisfied that the case was rightly disposed of, upon the facts found by the court below, and the judgment must be affirmed, with costs.

Present—DAVIS, P. J., and BRADY, J.

Judgment affirmed, with costs.