(8 App. Div. 1)

### COMMERCIAL BANK OF ROCHESTER v. MACDOUGALL & SOUTH-WICK CO.

(Supreme Court, Appellate Division, Fourth Department.   June 17, 1896.)

PAYMENT—MISTAKE OF FACT.

> One T. sold his business and property to defendant, who assumed and agreed to pay all T.'s debts.   Before the sale T. sent to one of his creditors to renew a note previously given to the creditor and discounted for him by plaintiff bank.   Instead of taking up the first note, the creditor transferred the renewal note to plaintiff as collateral security for a loan.  Afterwards plaintiff presented the second note to defendant, who paid it pursuant to his agreement to pay T.'s debts.   *Held*, that such payment was under a mistake of fact, and the amount would be applied in extinguishment of the first note, on which alone defendant was liable.

Action by the Commercial Bank of Rochester against the Macdougall & Southwick Company to recover the amount of an indebtedness of Toklas, Singerman & Co., which defendant was alleged, for a valuable consideration, to have assumed and agreed to pay.   The verdict was directed in favor of plaintiff, and defendant moves for a new trial on exceptions ordered to be heard in the appellate division in the first instance.   Granted.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Walter S. Hubbell, for plaintiff.

William N. Cogswell, for defendant.

GREEN, J.   Toklas, Singerman & Co., prior to July 15, 1891, was a firm doing business in the city of Seattle, Wash.   On that day they sold and transferred all their firm property to the defendant, and as part consideration the defendant assumed and agreed to pay all the debts and liabilities of the firm, due or to become due.   Holland & Co. were creditors of that firm for goods sold and delivered, and received the firm's promissory note, payable to the order of Holland & Co., who, prior to said assignment or transfer, indorsed and delivered the same to the plaintiff bank for value.  At the time of the transfer of the firm property to defendant, this note was not due, but would mature in about eight days.   Defendant knew nothing of the giving of this note, and was in no way a party to it; but it will be assumed, for the sake of argument, that this is one of those cases coming within the principle of Lawrence v. Fox, 20 N. Y. 268, and subsequent decisions, and that the plaintiff bank could maintain an action upon the defendant's agreement to pay the debts of its assignor or vendor.   On the day prior to the making of defendant's agreement, Toklas, Singerman & Co., in pursuance of a prior agreement with Holland & Co. to that effect, forwarded by mail another promissory note, in renewal of the original one, payable at three months.   A day or two subsequent to the execution of defendant's contract, Holland & Co. took this note to plaintiff bank, and transferred it to the bank as collateral for money which the bank advanced upon the faith of it, and as collateral security for a past-due indebtedness.   This was a wrongful diversion of the note, but the bank claims that it had no knowledge of

the fact that it was given as a renewal note, although it was for the same amount exactly ($1,970.30), until after it had received it, but supposed and believed that it arose out of a new, independent, and distinct transaction. Defendant was not cognizant of the existence of this note until it became due. Plaintiff claims that it had no knowledge of the fact that the defendant had assumed to pay the debts of the firm of Toklas, Singerman & Co. until after the second note became due, and consequently it parted with nothing on the faith of that agreement. The bank called upon the defendant to pay the second note, and we must assume that it founded its demand on the agreement made by defendant with Toklas, Singerman & Co.; otherwise it would be a most extraordinary circumstance that it should demand payment of a party who was an entire stranger to it. The defendant paid to plaintiff the amount so demanded. The bank concedes that it had no right whatever to make that demand, and that defendant was under no obligation at all to answer it,—that the money was voluntarily paid.

It is argued that the renewal or second note, although mailed to Holland & Co. before the making of the defendant's agreement, had no legal inception until it was indorsed to the bank subsequent to such agreement, and that, therefore, it was not an existing debt or liability against the firm of Toklas, Singerman & Co., which the defendant could be held bound to pay. Conceding this, for argument's sake, and what does it lead to? With what purpose did the bank demand and receive the payment? Did the bank appropriate or apply this money to the purpose for which it was paid? In so far as the defendant is concerned, these two notes represented but one indebtedness, of $1,970.30, which defendant assumed and was bound to pay; but the plaintiff, by retaining the money paid, insists that the defendant must pay double that sum. "Not so," says plaintiff's counsel. "We make no such claim. Our position is that defendant is legally liable to us only in the sum of $1,970.30, due upon that first note, which it refuses to pay and discharge. But you have that amount of money in your hands, belonging to defendant, which you are bound either to return, or to apply to the purpose for which it was paid, to wit, in discharge of defendant's liability for the indebtedness of said firm. You received that money for the same purpose for which it was paid, and, if you refuse to so apply it in discharge of defendant's indebtedness to you, the law will direct its application." Upon no other ground than that the second note was an obligation of the firm, for the payment of which defendant was liable, could the plaintiff call upon it for payment; but it is now admitted that defendant was under no legal obligation to pay it, and that plaintiff had no legal right to demand it, and yet plaintiff did demand and receive the money, and now refuses to apply it either to the legal claim, or to return it. If, at the time of receiving the money, the plaintiff had knowledge of the fact that defendant was not legally liable to pay this note, then it practiced a fraud upon the latter. If it did not have such knowledge, then it received it under a mistake of fact. And in either view it has no legal or equitable right to retain this money, unless it consents

to apply it to the indebtedness for which defendant is liable. Having retained the money, the law makes the proper application. It appears here that the defendant paid the note under a mistake of fact, believing that it represented an indebtedness of the firm, and without knowledge of the prior note. If it had possessed knowledge of the true facts of the whole transaction, would it have paid both notes? Surely not, and yet that is what plaintiff is here demanding that it should do. Thus it appears that according to plaintiff's admissions, and the conceded facts of the case, it is justly indebted to the defendant in the amount of the note upon which recovery is sought. True, this indebtedness is not pleaded as a counterclaim, or by the way of set-off, but that is not necessary, in the view of the court that the money constituted a payment, and that is alleged in the answer. Now, suppose that defendant had, prior to the institution of this action, brought an action against plaintiff for money had and received; what would have been the answer to that suit, in bar of a recovery? Why, the answer would be not that the money was voluntarily paid upon the note, to which the plaintiff was not a party, nor under any obligation to pay, but that the payment was made in discharge of a certain indebtedness of a third party, which the plaintiff had assumed and agreed to pay, and that the defendant held the legal title to the claim, either as indorsee or assignee. That would be the objection which the defendant here would encounter. If the defendant in that action should omit to set up such defense, it is clear that the money, having been paid under a mistake of fact, could be recovered back. Bank v. Eltinge, 40 N. Y. 391, 66 N. Y. 625; Union Nat. Bank v. Sixth Nat. Bank, 43 N. Y. 452.

It is contended with all seriousness that, so far as the equities of the case are concerned, they are with the plaintiff, for it acted innocently, and, in good faith, advanced money on both of the notes, and is not responsible for the fact that the defendant paid the note for the payment of which it is not liable; that the trouble was all caused by Holland & Co.; that Toklas, Singerman & Co. carelessly put it into the power of Holland & Co. to divert the second note, and defendant voluntarily paid it, as to each of which transactions plaintiff was not negligent, nor did it lose its original right to recover upon defendant's promise to pay the note in suit. The fallacy of the argument consists in eliminating the important circumstance that the defendant was not a party to either of those notes, nor to any of the transactions connected with their execution, indorsement, or transfer to the bank, and the latter never parted with a farthing upon the faith of defendant's agreement, of the existence of which it was entirely ignorant. We are unable to conceive of any principle of equity, or any rule of law, that would warrant a recovery in such a case as this. Even though defendant was aware of the fact that the second note was a renewal note, at the time he made the payment, that circumstance would be wholly immaterial, for it could not create a right of action upon his agreement to pay the original note. They both represented one indebtedness, in so far as the defendant was concerned, and it was

immaterial whether payment was made in form upon either one or the other. Such a payment would discharge his obligation. So, if the defendant had paid both notes under the mistaken assumption that both were distinct obligations of the firm, which he had assumed to pay, the amount he paid under a mistake of facts could be recovered back. The defendant's obligation arises out of its contract, and is not created by the notes, or either of them. By that contract it assumed and agreed to pay the specific sum of $1,970.30 due to Holland & Co.; and the simple question is, did they fulfill their agreement and discharge their obligation by making payment of that indebtedness to the rightful party? If so, what more can be required of the defendant? Plaintiff here is seeking to hold defendant responsible for the wrongful and fraudulent acts of its assignors (Holland & Co.), who were the creditors of the firm, and whose claim the defendant agreed to pay. Surely, it cannot be pretended that the defendant assumed any responsibility for the acts or conduct of the creditors of the firm. If the plaintiff has sustained loss by reason of the insolvency of the makers and indorsers of the note, it is a consequence of the wrongful act of the person with whom it dealt, and for whose conduct defendant assumed no responsibility. The makers of the note were precluded by the rules of law applicable to negotiable paper from setting up as a defense to an action by a bona fide purchaser for value the wrongful diversion of the note. But, since the defendant was not a party to the notes, the law merchant has no application to his obligation, nor may his liability be extended beyond its terms. The ground of the maker's liability is that the purchaser advanced moneys or parted with value on the faith of the note, and without notice of the wrongful diversion, and he is entitled to be protected only to the extent of the value which he has paid. Huff v. Wagner, 63 Barb. 215; Harger v. Wilson, Id. 237; Stevens v. Bank, 3 Hun, 147; Todd v. Shelbourne, 8 Hun, 512; Fairbanks v. Sargent, 104 N. Y. 122, 9 N. E. 870. The plaintiff advanced but $400, I believe, on the second note, and to that extent only could it recover from the makers. The bank parted with nothing upon the strength of defendant's contract.

Another thing: The cashier of plaintiff's bank was informed on the day the first note fell due that the second note was a renewal note. Plaintiff claims that it acted innocently when it received payment of the second note. It had in its possession two notes for the exact sum, $1,970.30, and yet it claims to have had no suspicion that one might be a renewal note. How was it that the payment of the original note was not required of defendant? How was it that defendant was not informed of its existence when he paid the second? For what reason was it that a stranger to the note is requested to pay it, or was looked to for payment? If we assume that plaintiff's officers acted in ignorance of the exact nature of the transactions, must the defendant suffer for it? Should it be held responsible not only for the fraudulent acts of the plaintiff's assignors, but also be saddled with responsibility for the mistakes and blunders of plaintiff's officers?

It becomes unnecessary to consider the question that has been so elaborately and learnedly argued,—whether, if this payment had not been made, the plaintiff would have been entitled to maintain an action upon the agreement and guaranty executed by the defendant, though it must be confessed that grave doubts exist as to whether the instruments in question are of such a character that a third party may assert a right of action upon them.

Plaintiff derives its title to both notes through Holland & Co., and, if it has sustained damage, it must look to them for redress, and may also hold the makers responsible to the extent of the moneys advanced, upon the strength of their signatures to a negotiable instrument, for the reason that their promise was, in the view of the law merchant, a promise to be answerable for the wrongful and fraudulent negotiation of the paper to a bona fide holder for value. But the defendant's agreement or guaranty was not of that character, and, in a legal sense, it can hardly be maintained that any damage whatever was sustained by the plaintiff, for it received what it bargained for, viz. the valid promissory note of the makers, who are liable to the extent of the value parted with on the faith of the note. The fact that the plaintiff may have been prejudiced in their rights by forbearing to enforce the past-due indebtedness of Holland & Co., for which the note was received as collateral security, does not constitute damage, in a legal sense. That indebtedness still exists, and has always existed. In respect to defendant's rights and liabilities, the payment of the second note discharged the original one, and he was entitled to its surrender or cancellation. Story, Prom. Notes, §§ 106–112.

There is no element of estoppel in the case, for the defendant here has done nothing, by act, word, or deed, to mislead the plaintiff to its prejudice, or to cause it loss or damage, and is not, therefore, precluded from contesting its liability to pay the amount of the first note by showing that it paid a sufficient sum of money in satisfaction and discharge of the only claim for which it was liable.

The motion for a new trial should be granted, with costs to abide the event of the action. All concur, except WARD, J., who dissents.

Motion for a new trial granted, with costs to abide the event.