YELLOWSTONE NATIONAL BANK, RESPONDENT, *v.*
GAGNON, APPELLANT.

Submitted April 6, 1897.  Decided April 26, 1897.]

*Negotiable Paper—Pledgee—Bona Fide Purchaser.*

NEGOTIABLE PAPER—*Pledgee.*—The endorsee of negotiable paper, who takes the same
  before maturity as collateral security for a pre-existing debt of the payee, is to the
  extent of his claim a purchaser in good faith and is not affected by equities between
  the parties of which he had no notice.
SAME.—Where, however, the debt is less than the amount named in the collateral note,
  the pledgee is protected against equities between the original parties, only to the ex-
  tent of the debt for which the collateral was given.

*Appeal from District Court, Yellowstone County.   George
B. Milburn, Judge.*

ACTION by the Yellowstone National Bank of Billings, a cor-
poration, against E. H. Gagnon.   From a judgment in favor
of plaintiff, defendant appeals.   Reversed.

Statement of the case by the justice delivering the opinion.

The plaintiff and respondent bank sued the defendant and
appellant to recover upon three promissory notes made by the
defendant.   One of the notes was dated April 25, 1895, for
the sum of $750.   Another note was dated October 9, 1894,
was due one year after date, and made to the order of J. J.
Nickey, for $2,392.75.   The complaint alleged that Nickey,
the payee named in the note, before maturity, duly indorsed,
assigned, and delivered the said note to the plaintiff, who was
at the time of the commencement of this suit the holder and
owner thereof.   The third note was a joint and several one
for $500, made by F. H. Nickey and the defendant.   The
plaintiff demanded judgment against the defendant for the
amount of the three promissory notes.

The defendant filed a special and general demurrer, which
was overruled.   The defendant then answered, admitting the
execution of the note for $2,392.75, and admitting its de-

livery to Nickey, as alleged in the complaint, but set up that the plaintiff was not the owner or holder thereof, except as set forth in the answer.    It is then alleged: "That the said J. J. Nickey, as this defendant is informed and believes, at the time he delivered said note to the plaintiff, was indebted to the plaintiff in the sum of twelve hundred dollars, with interest then accrued thereon, which indebtedness was evidenced by a promissory note of the said Nickey, which the plaintiff held against said Nickey; and that to secure the payment of said promissory note of $1,200, held by the plaintiff against said Nickey, the said Nickey indorsed and delivered to and pledged the said note of this defendant for the said sum of $2,392.75 to said plaintiff, as collateral security, and not otherwise; and that the same was taken by the plaintiff as collateral security for the said note of $1,200 of the said Nickey, and for no other purpose or use; and that, as this defendant is informed and believes, the said Nickey was not indebted to the plaintiff at the time of the commencement of this action in any other or greater sum than the said $1,200, with the accrued interest thereon, as evidenced by the said promissory note, for which the said note of this defendant to said Nickey was pledged as collateral security as aforesaid, or otherwise.

Further answering the complaint, the defendant alleges that, at the time said note was made and delivered by this defendant to said Nickey, the defendant and said Nickey were co-partners in certain mining and other interests; and that said co-partnership still exists; and that no settlement thereof has been made between the defendant and said Nickey; and that the defendant has a good and valid defense against said note of $2,392.75 to the extent of about $1,200; and that, therefore, this plaintiff is not entitled to recover from this defendant, on said alleged second cause of action, only the amount of said $1,200 note of said Nickey, with the interest accrued thereon."

No replication was filed.    The plaintiff bank moved for judgment on the pleadings for the amount claimed in the complaint, on the ground that the answer did not state a defense

to any cause of action in the complaint.    This motion was granted by the court, and judgment entered in favor of plaintiff, and against the defendant, for $4,493.25, together with costs.    The appeal of the defendant is from the judgment.

*O. F. Goddard*, for Appellant.

*Gib S. Lane*, for Respondent.

HUNT, J.—In considering the question presented by this appeal, it must be remembered throughout that the single note over which this controversy arises—that is, the note for $2,392.75—was indorsed to the plaintiff by Nickey simply as collateral security for a debt of $1,200, due the bank by Nickey.    It is upon this note that the plaintiff maintains a right to recover for the face thereof unconditionally and in all events, without reference to the debt of Nickey intended to be secured thereby.

Much space in the brief and argument of the respondent's counsel is devoted to supporting the proposition that an indorsee of a negotiable promissory note, taking the note in good faith, as collateral security for an antecedent debt, and with no other consideration, is entitled to be regarded as a holder of such paper for value, and consequently unaffected by an equitable and valid defense of the maker against the payee.

But we do not understand that the appellant disputes that general proposition of law.    Ever since the decision of the supreme court of the United States in the case of *Railroad Co.* v. *National Bank*, 102 U. S. 14, reaffirming the doctrine established by that court in *Swift* v. *Tyson*, 16 Pet. 1, and reviewing the English and American authorities at length, it may be affirmed as a result of the best cases that the transfer of negotiable paper before maturity as collateral for a preexisting debt merely, without other circumstances, "if the paper be so indorsed that the holder becomes a party to the instrument, although the transfer is without express agreement by the creditor for indulgence," is within the usual course

of commercial business, as much as would be its transfer in payment of such debt. "In either case," said Justice Harlan, "the *bona fide* holder is unaffected by equities or defenses between prior parties, of which he had no notice."

Applying the principle just stated to the pleadings in the case before us, we find that the indorsement of the note by Nickey to the bank, as a collateral security for his own pre-existing debt, was upon a sufficiently valuable consideration for the transfer to bring the case within the rule which protects the holder of negotiable paper, and entitles the bank to the full benefit of the security. And we now are brought to the real question raised by the appellant, but which has to some extent been lost sight of by the respondent.

The facts pleaded show that Nickey only owed the bank $1,200 and interest at the time he transferred the Gagnon note for $2,392.75, to it as collateral security, and that the defendant, who was the original maker of the note, has an equitable claim against Nickey, growing out of some partnership relations that existed between them.

The question, therefore, is not whether the bank is a *bona fide* holder at all, but to what extent is it to be regarded as a *bona fide* holder for value, and how much may it recover upon such note delivered to it as collateral security only?

The degree of protection to which the bank is justly entitled is, in our opinion, controlled by the amount of the pre-existing debt of the payee of the note to the bank, or the extent of the obligation to secure which the note was passed as collateral.

Daniel on Negotiable Instruments (section 832a) expresses the rule in this language:

"When it appears that the bill or note was acquired by the holder as collateral security for a debt, and he is deemed entitled to recover upon it, he is still limited to the amount of the debt which it secures, if there be a valid defense against his transferror being regarded as, at all events, a *bona fide* holder, and entitled to stand upon a better footing only *pro tanto*. Thus, such a holder could recover against an accom-

modation party no more than the consideration actually advanced; but, in the absence of proof, he will be deemed to have advanced the full amount of the paper.''

The pledgee of the note is fully protected against loss by its right to recover the full amount of the debt due to it by the payee. Its rights are preserved, which is all it may reasonably ask.

This general principle was recognized over 50 years ago in the case of *Williams* v. *Smith*, 2 Hill 301, where the court after declaring that a person to whom a promissory note was transferred before due as collateral security for indorsements to be made to him, which were afterwards made, and who took the note without notice of a defense existing against it in the hands of the person from whom he received it, was entitled to be treated as a *bona fide* holder, decided, however, that, inasmuch as the person who took the note received it as collateral security, he could recover no more than the amount remaining due on the principal demand.

This doctrine was followed in the early case of *Valette* v. *Mason*, 1 Smith (Ind.) 89. That was an action in assumpsit by an assignee against the makers of a promissory note. The defendants pleaded that the note was assigned to the plaintiff only as collateral security for certain money lent and advanced to the payee. It was decided, as in the case of *Williams* v. *Smith*, cited above, that the holder of commercial paper assigned as collateral security is entitled to be regarded as a holder for a valuable consideration, and is not bound by equities existing between the payee and the makers which would interfere with the collection of his debt, but that in a suit on such paper the holder is not entitled to recover more than the debt actually due to him, if any part of it has been previously paid, or if there is no good consideration as between the original parties.

Chief Justice Shaw, in *Stoddard* v. *Kimball*, 6 Cush. 469, briefly discussed the question of what amount the holder of a promissory note, as indorsee, had a right to recover of the maker where the note was negotiated to the plaintiff as col-

lateral security for a debt due to him.  He was of the opinion that, the plaintiff having taken the note to secure a pre-existing debt of a less amount, was holder for value in his own right only to the amount of the debt due him.

In *Youngs* v. *Lee*, 18 Barb. 187, it was also decided that the *bona fide* purchaser and holder of a note was entitled to recover the amount paid for it, "with interest, and no more."

Colebrooke on Collateral Securities (section 92) cites several of the cases just referred to, and deduces the following text from them :

"Where negotiable promissory notes, pledged as collateral security, are accommodation paper, without consideration, or subject to an equitable set-off, or, in cases of misappropriation, as between the makers and payees and indorsers thereof, and the collateral securities are of greater amount than the loan represented by the principal evidence of indebtedness, the recovery of the pledgee against the makers upon an action thereon is limited to the amount of his advances.  The pledgee in such cases of fraud is a holder for value of the collateral note, as against the makers of such paper, to the extent only of his interest at the time he acquires the title or has notice of the defenses to it."

This doctrine is also followed in *Bank* v. *Barnett*, 27 La. Ann. 177.

In *Fisher* v. *Fisher*, 98 Mass. 303, the court affirmed the case of *Stoddard* v. *Kimball*, heretofore cited, and held that where the evidence established the fact that the plaintiffs received the note from the holder before its maturity, without any knowledge of the circumstances under which the defendants had delivered it to the payee, or the purpose for which the latter delivered it to the holder, and where it was shown that it was held by the plaintiffs as collateral security for a valid debt due from the holder to them, plaintiffs, as *bona fide* holders for value and without notice, could recover "to the extent of their debt for which the note was pledged as collateral security."

In *Huff* v. *Wagner*, 63 Barb. 215, the court sustained the

principle that "a *bona fide* holder of commercial paper, to which, as between the maker and payee, there is a good defense, is entitled to be protected only to the extent of the value which he has paid." The court there further said :

"The protection of the holder for value in such cases, as in other cases where the law protects *bona fide* purchasers against latent claims, is founded upon the idea of protecting such *bona fide* purchasers for value against any possible loss. And this is the precise reason why a *bona fide* holder of such paper, which has been transferred to him to secure an antecedent debt, cannot recover against the party who has been defrauded, namely, that he has lost nothing by his reliance upon the face of the paper."

The supreme court of New Jersey, in *Duncan* v. *Gilbert*, 29 N. J. Law 521, followed a like doctrine, and said : " It is certainly true that the holders of accommodation paper assigned as collateral security, can recover against the accommodation maker and indorser no more than the consideration actually advanced."

In a very able review of the decisions upon the question of whether a person situated as was the plaintiff in the case at bar is entitled to the position of a holder of negotiable paper for value, and therefore not affected by the defense of want of consideration to the maker, the court of appeals of Maryland, through Chief Justice Alvey, also decided that all the plaintiff in such a case can recover is the amount due on the debt for which the note has been taken as collateral security. "In such case," said the chief justice, "while the plaintiff is entitled to be treated as a holder for value, it is only so to the extent necessary to protect the debts intended to be secured." (*Maitland* v. *Bank*, 40 Md. 540.)

Tiedeman on Commercial Paper (section 304) states that, where the pledge of a negotiable note is made for the purpose of securing the payment of a debt, the better rule is that the pledgee can recover the whole of the face value of the note, and hold the balance over and above the amount of his own claim as a trustee for the pledgor. It would seem, therefore,

as if he took a different view of the law from that taken by Daniel, although he expressly states in a subsequent part of his text that the pledgee in such a case is a *bona fide* holder only in respect to the amount of his claim against the pledgor; and, if there be a good defense to an action on the collateral by the pledgor, the recovery of the pledgee is limited to the amount of his claim against the pledgor. But we think that, if the pledgee is to be regarded in such a case (as he undoubtedly should be) as a *bona fide* holder only to the amount of his claim against the pledgor, and if he be limited in his recovery to the amount of his claim, it is most reasonable that the controversy over the balance be litigated by those directly interested, and that ordinarily the pledgee is not to be held as a trustee for the pledgor.

We are aware that there is a contradiction of opinion as to the attitude of the pledgee who seeks to recover the full amount of the collateral where such amount is in excess of the debt secured to him; but we are content to adopt the rule sustained by the decisions already cited, which limit his recovery to the amount due to him. In addition to the cases above cited, we may include *Steere* v. *Benson*, 2 Ill. App. 560, and *Bank* v. *Hemingray*, 34 Ohio St. 381.

A recent case upon this subject is that of *Farmers' State Bank* v. *Blevins*, 46 Kan. 536, 26 Pac. 1044. There the court stated the question substantially as follows:

In an action against the maker of the notes which had been transferred before maturity to an innocent and *bona fide* holder as collateral security for an indebtedness existing between the payee of such notes and the indorsee, is the indorsee entitled to recover against the maker to the full amount of such collateral notes, where such amount exceeds the indebtedness which they were transferred to secure, without regard to any defenses that may exist between the original parties to such notes, or is in such case the right of the plaintiff to recover limited to the amount of the principal debt? In that case, as in the one before us, equitable defenses were made by the pleadings; and it appeared that there was a controversy be-

tween the maker and the payee of the notes, by which it ap-
peared that the paper was subject to equitable set-offs between
the maker and payee.    The court answered the question by
holding "that the doctrine that the pledgee cannot recover
more than the amount of the debt of the pledgor is in accord
with natural justice," and that, while it hesitated to state that
as a rule, yet it did not think that any other rule ought to be
applied without great caution.    We are impressed with the
reasoning in the Kansas case, and believe it correct in princi-
ple, as well as more practical, and well founded by the several
decisions relied upon in the opinion of that court and the
additional authorities above referred to by us.

There is another point made by the supreme court of Kansas
in their decision which is applicable in this case as well.    We
think that the payee of the note, Nickey, ought to have been
made a party to this litigation.    Although the bank, under the
views that we have taken of the law applicable to its rights,
really has no interest in the controversy between Nickey and
Gagnon, yet it would be eminently proper that the whole con-
troversy be settled in this one action, and that the rights of all
parties be determined.    As was asid by the supreme court of
Kansas in the case above cited: "At the commencement of this
action to recover on the notes as pledgee, the bank ought to have
made Brady a party.    He was the payee of the notes sued
upon.    He had transferred them by indorsement to the bank,
who claims to be an innocent holder for value.    Even after
Blevins filed his answer, setting up his various defenses as
against Brady, and the knowledge of the bank of these equit-
able defenses, the bank, for protection against Brady, ought
to have made Brady a party, as it now insists upon a recovery
for the full amount of the notes; and yet it is shown that
Brady's pre-existing indebtedness to the bank is less than the
face of the notes and interest.    As Brady was not a party
then, and is not now, he will not be bound by the decision of
this court on the question presented."

We think the case at bar is one where the court might
properly order the payee of the note to be made a party, and

that in the further conduct of the case this ought to be done, provided the pleadings remain as they are.

It follows, therefore, that the motion for judgment on the pleadings was improperly granted. The judgment is therefore reversed, and the cause is remanded to the district court, with direction to overrule said motion, and to proceed according to the views expressed herein.

*Reversed and Remanded.*

PEMBERTON, C. J., and BUCK, J., concur.