[No. 9912.    Department Two.    May 14, 1912.]

CANADIAN BANK OF COMMERCE, *Respondent*, v. SESNON COMPANY, *Appellant*, KIMBALL COMPANY, *Defendant*.[1]

PLEDGES—LETTER OF HYPOTHECATION—POWER TO SUE—CONSTRUCTION.  A general letter of hypothecation providing that securities are to be held by a bank as a general and continuing collateral security for the payment of present and future indebtedness and liability, and that the bank may realize thereon and deal with the same as it sees fit, authorizes the bank to bring suits and actions thereon.

BILLS AND NOTES—PAYMENT—EVIDENCE—SUFFICIENCY.  There is sufficient evidence that a note made by one corporation to another was paid, where it appears that after the close of a season in which they had extensive dealings, accounts between them were settled showing more than sufficient to satisfy the note, the correctness of the account, so far as material, not being questioned.

PLEDGES—RELEASE OF SECURITY—AUTHORITY OF PLEDGOR TO COLLECT —EVIDENCE OF CUSTOM—SUFFICIENCY.  A custom between a bank and its hypothecator of securities, by which the latter was authorized to collect and give acquittances for any and all collateral pledged, is not proven by the fact that on three or four occasions such collec-

[1]Reported in 123 Pac. 602.

tions were made and the collateral afterwards released by the bank, where in all the cases but one, the release was upon payment of the face value to the bank, and in that one the release was made as an accommodation to a customer.

PAYMENT—NOTES—CHANGE IN FORM OF INDEBTEDNESS. The fact that an overdraft at a bank was afterwards put into the form of negotiable promissory notes does not establish payment of the original indebtedness, which was secured by collateral.

BILLS AND NOTES—INDORSEMENT—FOR COLLATERAL—HOLDER IN DUE COURSE—RIGHTS. The indorsee of a note, indorsed for collateral security, although a holder in due course to the extent of his interests, cannot enforce the note in excess of the amount for which the note is security, where the maker has a defense against the original payee.

EVIDENCE—BEST AND SECONDARY EVIDENCE — INDEBTEDNESS. The state of an account and indebtedness to a bank may be shown by oral evidence of its officers, although the same had been evidenced by promissory notes, where the face of the notes did not represent the true relation of the parties.

APPEAL—REVIEW—HARMLESS ERROR—ERROR NOT AFFECTING APPELLANT. In an action against the maker and indorser of a promissory note, indorsed as security, the maker cannot complain of error in entering judgment on the note without requiring the surrender of the notes of the indorser for which the note in suit was collateral, as it does not affect the appellant.

Appeal from a judgment of the superior court for King county, Ronald, J., entered May 15, 1911, upon findings in favor of the plaintiff, in an action upon a promissory note, after a trial to the court. Reversed.

*William H. Gorham,* for appellant.

*Ira Bronson,* for respondent.

FULLERTON, J.—This action was brought in May, 1911, by the respondent, the Canadian Bank of Commerce, against the appellant, the John J. Sesnon Company and the defendant the J. S. Kimball Company, to recover upon a promissory note, made and delivered by the Sesnon Company to the Kimball Company, and by the latter company indorsed and delivered to the bank. The note was a demand note for the

sum of $10,000, and provided for interest payable monthly at the rate of six per centum per annum. A recovery was had in the court below for the sum of $14,185.70, the amount due in principal and interest on the face of the note. The Sesnon Company appeals.

On the trial, it developed that the Kimball Company, at the time the note was indorsed to the bank, had an open current account with the bank on which it was indebted in a sum exceeding the face value of the note, and that to secure such indebtedness it had from time to time deposited with the bank certain collaterals, under a general letter of hypothecation, by the terms of which all such collaterals were to be held by the bank "as a general and continuing collateral security for payment of the present and future indebtedness and liability" of the company to the bank, "and any ultimate unpaid balance thereof," with power on the part of the bank to realize upon them in such manner as might seem to the bank advisable. The note in question was deposited as a part of such collateral, and was held by the bank as such at the time it was sued upon in the present action. It developed, also, that the indebtedness represented by overdrafts at the time the note was deposited was long since taken up by promissory notes, so that all of the indebtedness of the Kimball Company to the bank at that time was represented by such notes.

The appellant defended on several grounds. It contended that it had paid to the Kimball Company the indebtedness represented by the note in suit; that a custom existed between the bank and the Kimball Company by which the company was authorized to collect and give acquittances for any and all collaterals pledged by the company to the bank and that the appellant paid the note knowing and relying upon this custom and was entitled to a cancellation and return thereof; that the indebtedness of the Kimball Company to the bank which the note was given to secure was fully paid; and that the general letter of hypothecation under which the

bank holds the note as collateral does not authorize the bank to sue thereon. It also made the contention that the respondent had not shown by competent evidence that any indebtedness now exists between the Kimball Company and the bank.

Taking up these contentions somewhat out of the order in which the appellant presents them, we will first notice the contention that terms of the general letter of hypothecation under which the note in suit was pledged does not authorize the bank to sue thereon. While there is no special clause in the letter authorizing a suit or action upon a note held as collateral under it, we think the general terms used are broad enough for that purpose. The letter provides:

"The said securities, and any renewals thereof and substitutions therefor and proceeds thereof, are to be held by the Canadian Bank of Commerce as a general and continuing collateral security for payment of the present *and future* indebtedness and liability of the undersigned, and any ultimate unpaid balance thereof, and the same may be realized by the bank in such manner as may seem to it advisable, and without notice to the undersigned in the event of any default in such payment. The said proceeds may be held in lieu of what is realized, and may as and when the bank thinks fit be appropriated on account of such parts of said indebtedness and liability as to the bank seems best. The bank may grant extensions, take and give up securities, accept compositions, grant releases and discharges, and otherwise deal with the undersigned and with other parties and securities as the bank may see fit, without prejudice to the liability of the undersigned."

Authority to realize on the security deposited and to deal with them as the bank may see fit, is authority to bring suits and actions thereon.

With reference to the payment of the note by the appellant to the Kimball Company, we think that the preponderance of the evidence supports the contention that the note was paid, for the larger part at least. It appears that, during the summer and fall following the making of the note, both the Sesnon Company and the Kimball Company engaged in busi-

ness at Nome, Alaska, and the surrounding territory; that the companies had extensive dealings with each other, during the course of which the Sesnon Company made large advances to the Kimball Company; that on the return of the companies to San Francisco in the fall of 1904, the accounts between the companies were settled, showing a balance due from the Kimball Company to the Sesnon of an amount more than sufficient to satisfy the note. The manager of the Sesnon Company sets forth in the record an account of these dealings in which the several debits and credits going to make up the totals are itemized. The correctness of this account, with the exception of one item, is not questioned by the officers of the Kimball Company who testified for the respondent, although they deny generally that the note has been paid. The item referred to is a payment of $5,000 made to the president of the Kimball Company. As to this, it is said that it was paid on an account of profits accrued on certain stock which the president of the Kimball Company at one time owned in the appellant company, and should not be credited as a payment on the note. But if we eliminate this item, it still leaves a balance sufficient to pay one-half of the principal of the note and the interest due thereon for the year 1904, and this is sufficient for the purposes of the present case. The result of the case will not be changed whether we credit the note for the full amount claimed to be paid, or for that amount less the item of $5,000.

As to the custom set up in the answer, we think it is not proven. The appellant was able to show that, on three or four occasions, the Kimball Company accepted payment of collateral securities which were afterwards released by the bank and returned to the makers, in one of which instances it was shown that the full sum paid to the Kimball Company was not turned over to the bank, but this falls far short of establishing the custom pleaded. Moreover, the transactions were satisfactorily explained by the officers of the bank. It was shown that in all of the instances except one the secur-

ities were released on the payment of their face value to the bank, and in that one the surrender of the security was made for a less sum than the face value thereof as an accommodation to its customer, its account with the bank being in no way jeopardized thereby.

The contention that the indebtedness of the Kimball Company to the bank is paid is also without foundation. It is based on the fact that the indebtedness was originally represented by overdrafts and was afterwards put into the form of negotiable promissory notes. But this did not constitute a payment as between the parties. It changed the manner in which the debt was evidenced, but the debt continued to exist nevertheless.

In this state (and in the absence of a contrary showing we will presume the law of the place of indorsement to be the same) an indorsee of a note taken as collateral security is a holder in due course to the extent of his interests, if the note is taken before maturity and without notice of any existing equities between the maker and the original payee. *Peters v. Gay*, 9 Wash. 383, 37 Pac. 325. But the rights of such a holder are restricted to his interests; the rule being that, where the maker of a negotiable instrument, indorsed as collateral security, has a defense against the original payee of the instrument, the indorsee can in no event enforce payment in excess of the amount which the note is pledged to secure. *Farmers' State Bank of Solomon City v. Blevins*, 46 Kan. 536, 26 Pac. 1044; *Second Nat. Bank v. Hemingray*, 34 Ohio St. 381; *Farwell v. Importers etc. Nat. Bank*, 90 N. Y. 483; *Yellowstone Nat. Bank of Billings v. Gagnon*, 19 Mont. 402, 48 Pac. 762.

It must follow, therefore, that since the appellant had a partial defense to the note in suit as against the original payee thereof, and since the respondent held the note as collateral security for the debt of the Kimball Company, the respondent could recover on the note as against the appellant nothing more than its actual debt, if that debt exceeded

the amount due from the appellant to the Kimball Company.

It is the appellant's contention that there is in the record no competent proofs of any existing indebtedness from the Kimball Company to the respondent bank. The proofs consisted of the statements of the officers of the bank while on the witness stand. As illustrative of the nature of the evidence offered on the point the following is quoted from the testimony of the manager:

"Q. How did this note [the note in suit] come into possession of the bank, or what has been the bank's relation to it since that time? A. This note was taken by the bank in connection with a loan of $10,000 made to J. S. Kimball Company. Q. What has been the relation of the J. S. Kimball Company to the Canadian Bank of Commerce since that time? Has it been a debtor of the bank? A. The Kimball Company has been a debtor of the bank. Q. In what form, notes or overdrafts? A. Notes and overdrafts. Q. Do you know whether or not the Kimball Company has been indebted to the bank at all times since then in the sum of $10,000 or in excess of that? A. I believe their loan account has always been that amount or in excess of it."

It is thought that this evidence is incompetent to prove the indebtedness, because, as it was shown elsewhere, the indebtedness between the parties at the time of the trial was evidenced by notes entirely and the best evidence was the notes themselves. But we think the evidence competent. It is always competent to show by parol, in an action brought to recover on a promissory note, that the note does not on its face represent the true relation of the parties, that is, it may be shown that the note is paid and satisfied although no credits at all appear thereon, or that the credits indorsed thereon are only a part of those that should be so indorsed; hence it would seem that parol evidence is competent to show the state of an account between one person and another. In this connection it is complained, also, that the notes from the Kimball Company to the bank were not produced and filed when judgment was entered on the note in suit. But

this is not a ground of complaint available to the appellant. Since judgment was sought against the Kimball Company as an indorsee of the note in suit, that company might properly have insisted, as a condition precedent thereto, that the notes due from it to the bank be brought into court and indorsed as paid to an amount equal to the judgment recovered by the company, but this was a right belonging solely to the Kimball Company. It was not error that can avail the appellant which was in no way affected thereby.

From the foregoing considerations, we think that the respondent was entitled to recover on the note in suit to the extent of its interests, and nothing more. Since the appellant, as maker of the note, had an offset against the original payee thereof, and this original payee still retains an interest in the note to the extent of the surplus over and above the indebtedness for which it is pledged, the maker may offset against any recovery above the sum for which the note is so pledged. The indebtedness of the Kimball Company to the bank, in so far as it was shown with any definiteness, is ten thousand dollars. As this sum is greater than the balance due on the note, if the offset be allowed, the recovery should have been confined to that sum in the court below. It follows that the judgment should be reversed and the cause remanded with instructions to enter a judgment against the appellant for ten thousand dollars. It is so ordered.

DUNBAR, C. J., ELLIS, MORRIS, and MOUNT, JJ., concur.