[No. 12501.    Department Two.    May 12, 1915.]

GERMAN AMERICAN BANK OF SEATTLE, *Respondent*, v. A. H. WRIGHT *et al.*, *Appellants.*[1]

BILLS AND NOTES—ACTIONS—PLEADING AND PROOF—VARIANCE. In an action to recover upon a bank check, in which the complaint tendered an issue of the unqualified ownership of the check and the answer pleaded that the check was held as collateral only, the quality of plaintiff's possession, as the real issue, was presented by the pleadings, the answer supplying what the complaint lacked; hence evidence sustaining the answer instead of the complaint cannot be urged as a variance amounting to failure of proof, under Rem. & Bal. Code, § 1752, requiring courts to decide cases on their merits, disregarding all technicalities and considering all amendments which could have been made as made.

PLEADINGS—VARIANCE—MATERIALITY. A variance is not material unless it actually misleads the adverse party to his prejudice in maintaining his action or defense on the merits, and the burden is upon him to show such fact.

BILLS AND NOTES—HOLDER IN DUE COURSE—ANTECEDENT DEBT— STATUTE. The holder of a bank check as collateral in part for an antecedent debt, is a "holder in due course" under the negotiable instruments act (Rem. & Bal. Code, §§ 3415-3418) providing that every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration, that an antecedent or preexisting debt constitutes value, and that, where a holder has a lien on the instrument he is deemed a holder for value to the extent of his lien.

SAME—HOLDER IN DUE COURSE—STALE CHECK—RIGHTS OF HOLDER —STATUTE. Under Rem. & Bal. Code, § 3576, requiring a check to be presented for payment within a reasonable time or the drawer will be discharged "to the extent of the loss caused by the delay," the taker of a stale check, although not an unqualified holder in due course, would be such holder, except in so far as the drawer of the check could show that he had been injured by the delay.

SAME—HOLDER IN DUE COURSE—EXECUTORY CONTRACT—CONSIDERATION—NOTICE. Knowledge by an indorser of a bank check that it had been given in consideration of an executory contract of the payee would not deprive the indorsee of his character of a *bona fide* holder in due course, where, at the time of the transfer, there had been no failure of consideration through failure of the payee to perform the contract for which the check was given.

[1]Reported in 148 Pac. 769.

SAME—HOLDER IN DUE COURSE—CHECK AS COLLATERAL—BURDEN OF PROOF. In an action on a bank check which had been pledged as collateral security, the burden would not be upon the pledgee as indorsee to show that it was a holder in due course, unless the title of the payee was defective by reason of fraud, duress, or other unlawful means, or because of an illegal consideration.

SAME—HOLDER IN DUE COURSE OF PLEDGED CHECK—EXHAUSTION OF SECURITIES. No principle of suretyship which would require a bank to exhaust other security before enforcing a check is involved in a transaction whereby a check is indorsed to a bank as collateral security for an antecedent debt of the indorser.

SAME—ACTIONS—EVIDENCE—COLLECTION OF CHECK—CUSTOM. The rejection of expert testimony that it was not customary or in keeping with prudent banking to hold a check taken as collateral for a period of twenty days before "sending it through" for collection, was not error, the material thing being injury to the maker, and this was not shown by the evidence.

BILLS AND NOTES—NEGOTIATION OF CHECK—BONA FIDE HOLDER—SECRET AGREEMENT. Where a negotiable check is given without anything indicating it was not to be negotiated, such as post-dating or other device, the maker cannot, after its negotiation by the payee, relieve himself of liability by setting up a secret agreement with the payee whereby the check was not to be cashed or negotiated, except under certain contingencies.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 25, 1914, upon findings in favor of the plaintiff, in an action on a check, tried to the court. Affirmed.

*Farrell, Kane & Stratton,* for appellants.

*Geo. D. Emery,* for respondent.

ELLIS, J.—This is an action to recover upon a check drawn by the defendant Wright upon the Lincoln County Bank of Merrill, Wisconsin, payable to the defendant Cavette and by him indorsed to the plaintiff. The facts are these:

On February 21, 1912, Wright, in the city of New York, made his ordinary bank check of that date upon his bank of deposit in Merrill, Wisconsin, to the order of the defendant Cavette for $5,000, and delivered it to Cavette. At that time Cavette, who was engaged in an effort to reorganize a

certain fisheries company, agreed to deliver to the defendant Wright $15,000 worth of of the fisheries stock about sixty days from the date of the check. Cavette testified that the check was given on account of this contract and as part payment on the stock; that the reorganization was to be completed about April 1, and the stock was to be delivered about April 21, 1912, and that in case he did not deliver the stock, he was to return the check to the defendant Wright. He also testified, and the fact is not disputed, that at the time of receiving Wright's check he, Cavette, gave to Wright his own check for the same amount, drawn on the plaintiff bank, as security to Wright that Cavette would carry out the contract.

Cavette returned to his home in Seattle about March 1, 1912, and about March 30, solicited a loan of $700 from the plaintiff bank. He was already indebted to the bank in the sum of $1,800, and the loan was declined unless he would give security, not only for the $700, but also for this antecedent indebtedness. He thereupon offered this check as security, promising to repay the whole debt, including the $700, in twenty days, and requested the bank to hold the check that length of time, agreeing to take it up, together with his note, at the end of that period. The bank officials, knowing that Wright was solvent, and as the cashier testified, believing the check good, loaned Cavette the additional $700, taking his note therefor, due in twenty days, and extending the time of payment of the former indebtedness of $1,800 for the same time, Cavette indorsing the check to the bank as collateral for the loan and extension. The transaction was negotiated through the bank's cashier acting for the bank.

Cavette testified that he told the cashier that the check was a contract check and that if he delivered the stock he was to get the money; that he did not go into details, but simply told the cashier that it was a contract check and that he had to deliver the stock to Wright; that he asked the cashier to hold the check for twenty days as collateral to the loan, and

that he thought he would be able to finish the whole transaction within twenty days; that nothing was said as to what was to become of the check at the end of that time, but that he, Cavette, expected to take up the note and check before that time, and, if he failed to do so, he supposed that the natural proceeding would be for the bank to send the check on for collection. Cavette further testified that at one time Wright had made a deposit in the bank to Cavette's credit, but that it was not to take care of any obligation to the bank. Wright testified that the check was not to be used for any purpose until Cavette delivered the stock to him; that the stock was to be delivered within sixty days, and if not then delivered the check was to be returned. It is admitted that the stock was never delivered.

The bank held the check until April 22, when, the note to which it was held as collateral being unpaid, the plaintiff bank wired the Wisconsin bank on which the check was drawn inquiring whether there were funds there to meet it, and at first received an affirmative reply, but later in the day received a further message that payment on the check had been stopped by Wright. The check was then forwarded for collection, payment was refused, and the check protested. This suit was then brought against Wright as maker and Cavette as indorser of the check, the plaintiff suing as owner. In their answers, both defendants alleged that the check was taken by the bank as collateral security, and this fact, as we have seen, was established by the evidence. The case was tried to the court without a jury. The court found that the bank was a holder in good faith for value and without notice of any equities between Wright and Cavette; that it received the check as collateral to the prior debt and the loan, in the usual course of business. Judgment was rendered for the plaintiff against both of the defendants for the amount of the loan and the antecedent debt, aggregating $2,500, with interest from the date of presentment, and the protest fees. Both defendants have appealed.

It is claimed (1) that there was such a variance between the pleadings and the proof as to amount to a failure of proof; (2) that the respondent was not a holder in due course and for value, hence was not entitled to recover on the check as against the appellant Wright.

I. The complaint, in effect, alleged that the bank was the unqualified owner of the check. The answer alleged that the check was held by the bank as collateral. The reply alleged that the check was taken on deposit. The appellants contend that the complaint tendered one issue, the reply another, and that the proof sustained neither. Looking to the substance of the thing, there is no merit in this contention. The complaint tendered an issue of unqualified ownership in the bank. The answer pleaded the fact that the bank held the check as collateral only. The evidence sustained the latter view. The pleadings presented as the real issue the quality of the bank's possession. That was the issue which was tried. When we can say with certainty that a definite issue has been presented and tried, we do not indulge nice distinction touching technical variations in the pleadings or between the pleadings and the proof. We proceed, as directed by the statute, to a decision of the case on its merits, disregarding all technicalities and considering all amendments which could have been made as made. Rem. & Bal. Code, § 1752 (P. C. 81 § 1255) ; *Yeisley v. Smith,* 82 Wash. 693, 144 Pac. 918; *Gaskill v. Northern Assurance Co.,* 73 Wash. 668, 132 Pac. 643; *Kelly v. Lum,* 75 Wash. 135, 134 Pac. 819, 49 L. R. A. (N. S.) 1151; *Bonne v. Security Sav. Society,* 35 Wash. 696, 78 Pac. 38.

A variance to be material must have actually misled the adverse party to his prejudice in maintaining his action or defense on the merits. The burden is upon him to show that he was so misled. The statute so declares. Rem. & Bal. Code, § 299 (P. C. 81 § 287). In this case, it is obvious that the appellants were not misled. Whatever was lacking in the complaint to present the issue tried was supplied by

their answers. *Butterworth & Sons v. Teale*, 54 Wash. 14, 102 Pac. 768; *Wheatman v. Kane*, 55 Wash. 226, 104 Pac. 258.

II. The second question, as to whether the respondent was a holder for value in due course, is twofold. (a) The appellants claim that respondent was not a holder for value because it held the check as collateral in part to an antecedent debt. Our statute, however, effectually disposes of this question contrary to the appellants' claim. The negotiable instruments act, reference being made to Rem. & Bal. Code, by section numbers, reads:

"§ 3415. Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value.

"§ 3416. Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time.

"§ 3417. Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time.

"§ 3418. Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien."

Clearly the respondent had a lien on the instrument arising from contract, and, as declared by the last section above quoted, it was a holder for value to the extent of that lien. This is the Federal rule, first announced by the supreme court of the United States, speaking through Mr. Justice Story, in *Swift v. Tyson*, 16 Pet. 1, in 1842, and continuously followed by the Federal courts and the courts of many states since. The discussion invited by the appellants, of the relative merits of the Federal rule and the former New York rule as declared by Chancellor Kent in *Bay v. Coddington*, 5 Johns. Ch. 54, would be a purely academic exercise, since the contract of indorsement was made in this state and our statute is con-

trolling as to its effect. The same is true as to the rule in Wisconsin. Moreover, even assuming that the law of either New York or Wisconsin would govern, the law of neither of those states was either pleaded or proved. We would, therefore, assume that the present law of both is the same as our own. As a matter of fact, the present negotiable instruments acts of both those states contain sections identical with our § 3418 above quoted. 2 Revised Statutes, Codes and General Laws of New York (3d ed.), chap. 50, art. 3, par. 53. Wisconsin Statutes (1913), chap. 78, § 1675-53. The supreme court of New York has held that the negotiable instruments act changed the rule laid down in the *Coddington* case so as to include among holders for value holders of negotiable instruments taken merely as collateral security for antecedent debts, modifying the old New York rule "so as to conform to the rule in England and in our Federal court of last resort." *Brewster v. Shrader,* 26 Misc. Rep. 480, 57 N. Y. Supp. 606. We have already declared the same rule in this state, but without expressly basing it on the statute. In *Canadian Bank of Commerce v. Sesnon Co.,* 68 Wash. 434, 123 Pac. 602, we said:

"In this state (and in the absence of a contrary showing we will presume the law of the place of indorsement to be the same) an indorsee of a note taken as collateral security is a holder in due course to the extent of his interests, if the note is taken before maturity and without notice of any existing equities between the maker and the original payee. *Peters v. Gay,* 9 Wash. 383, 37 Pac. 325. But the rights of such a holder are restricted to his interests; the rule being that, where the maker of a negotiable instrument, indorsed as collateral security, has a defense against the original payee of the instrument, the indorsee can in no event enforce payment in excess of the amount which the note is pledged to secure."

See, also, *Farmers' State Bank of Solomon City v. Blevins,* 46 Kan. 536, 26 Pac. 1044; *Second Nat. Bank of Cincinnati v. Hemingray,* 34 Ohio St. 381; *Yellowstone Nat. Bank of*

*Billings v. Gagnon,* 19 Mont. 402, 48 Pac. 762, 61 Am. St. 520, 44 L. R. A. 243.

(b)   It is next contended that the respondent was not a *bona fide* holder in due course because it took the check about five weeks after it was drawn, and to secure a then created debt of only $700 in addition to the antecedent debt of $1,800.

We shall assume, for the purpose of present discussion, that the check had been held by Cavette for an unreasonable time, that is for such length of time when it was taken by the respondent as to put the respondent on inquiry and charge it with notice of the facts then existing. The appellants contend that for that reason the negotiable instruments act, Rem. & Bal. Code, § 3444, makes the respondent not a holder in due course, but charges it with bad faith. That section reads:

"§ 3444.   Where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course."

That section, however, is general and is apparently modified, so far as checks are concerned, by later sections of the same act, relating specifically to checks, which read as follows:

"§ 3575.   A check is a bill of exchange drawn on a bank, payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check.

"§ 3576.   A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon *to the extent of the loss caused by the delay.*"

The words which we have italicized mark the limits of the rule as applied to checks. It is obvious that while the taker of a stale check is not an unqualified holder in due course, he is such holder except in so far as the drawer of the check is able to show that he has been injured by the delay. The

statute can mean nothing else. This is also in keeping with the rule as it existed under the law merchant. As said by the supreme court of the United States in *Bull v. Bank of Kasson*, 123 U. S. 105:

"Bank checks are not inland bills of exchange, but have many of the properties of such commercial paper; and many of the rules of the law merchant are alike applicable to both. Each is for a specific sum payable in money. In both cases there is a drawer, a drawee and a payee. Without acceptance, no action can be maintained by the holder upon either against the drawee. The chief points of difference are that a check is always drawn on a bank or banker. No days of grace are allowed. The drawer is not discharged by the laches of the holder in presentment for payment, unless he can show that he has sustained some injury by the default. It is not due until payment is demanded, and the statute of limitations runs only from that time."

The record here is barren of evidence that had the check been presented immediately after it was drawn, Wright, the drawer, would have been in any better position than he now is. No "loss has been caused by the delay." If Cavette had any right to use the check at all, it is obvious that his delay in using it caused Wright no injury or loss.

If we charge respondent with knowledge of everything that its cashier could have learned at the time he took the check it would merely be charged with knowledge that the check was given in connection with an executory contract for the purchase of certain stock to be delivered in sixty days from the date of the check, which time had almost thirty days yet to run before breach by failure to deliver the stock could occur. True, the appellant Wright testified that the understanding was that the check would not be negotiated until the stock was delivered, and Cavette testified that he was to return the check if he failed to deliver the stock, but did not testify that he made any such statement to the bank. The evidence is undisputed that when Wright gave this check to Cavette, Cavette gave Wright his own check on the re-

spondent bank for the same amount to secure the carrying out of the stock transaction. Wright must have intended something by the delivery of his unqualified check to Cavette. It was not even postdated. It was clearly intended either as a payment on the purchase price, as Cavette testified it was, or as an advancement of Wright's credit to Cavette upon the strength of the executory contract. The fact that there was an exchange of checks between Wright and Cavette can only be explained on the theory that Cavette was to use Wright's check to obtain credit, which he otherwise would have been unable to obtain. Charging the respondent, therefore, with knowledge of the executory contract and that the check was given in connection therewith, is still far from establishing appellants' charge of *mala fides*. The contract to deliver this stock was still executory. It was a valuable consideration for the check whether the check be considered as an actual payment thereon or as an advancement of Wright's credit to Cavette by reason thereof. No failure of consideration had then occurred. As we said in the case of *Moyses v. Bell*, 62 Wash. 534, 114 Pac. 193, touching a similar situation in relation to a note:

"The courts have repeatedly held that knowledge by an endorsee of a note that it had been given in consideration of some executory contract or agreement of the payee, which the payee afterwards fails to perform, will not deprive the endorsee of his character of a *bona fide* holder in due course, unless prior to its assignment to him he had notice of the breach of the executory contract, and that such breach had theretofore occurred."

See, also, the numerous authorities to the same effect there cited and quoted.

At the time that the respondent took this check, Cavette's title thereto was not defective, as defective titles are defined by the negotiable instruments act. (Rem. & Bal. Code, § 3446 (P. C. 357 § 109). Cavette did not obtain the check or Wright's signature thereto by fraud, duress or other un-

lawful means, or for an illegal consideration, nor can we say that his pledging the check to the bank while the contract was still executory was such a breach of faith as amounted to fraud, much less that it would, as a matter of law, charge the bank with notice of fraud. Since, under the evidence, Cavette's title was not defective when he pledged the check, § 3450 of the negotiable instruments act does not impose upon the bank as an indorsee the burden of showing that it was a holder in due course:

"§ 3450. (Every) holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course."

Viewing the whole transaction in the light of all of the evidence and applying the clear provisions of the negotiable instruments act, we are forced to the conclusion that the respondent was a holder of the check for value and in due course and is not chargeable with bad faith in the premises. Having taken the check as security, it is deemed holder for value to the extent of its lien.

We find no merit in the claim that the transaction should be treated as one of suretyship to the extent of the antecedent debt. So far as the abstract of record shows, this point was not raised during the trial. No motion was made to require the bank to exhaust other security which it held as collateral to Cavette's antecedent debt. In any event, we see no room for the application of the principle of suretyship. If the bank had cashed the check it would not have been incumbent upon it to look to the application of the proceeds, nor could Wright have complained. He is certainly in no worse position now than he would have been had the check been cashed.

Nor do we find any merit in the claim that the court erred in rejecting the testimony of an expert witness as to whether

it was customary or in keeping with prudent banking to hold a check taken as collateral for a period of twenty days before "sending it through" for collection. The material thing was whether the delay resulted in injury to the maker, Rem. & Bal. Code, § 3576 (P. C. 357 § 371). There was no evidence or offer of evidence tending to show that this delay caused Wright any loss whatever.

Finally, and aside from all technical rules of law, it seems to us that the trial court reached the correct result. The appellant Wright gave the appellant Cavette his negotiable check without any indicia whatever that it was not to be negotiated. The check, as we have noted, was not even postdated. If the check was not to be used, the reasonable thing, and that which would have absolutely protected the bank, would have been not to issue it. To permit an alleged secret agreement between the maker and the payee of a check, to which they have given currency, to defeat the check and relieve the maker from all liability thereon would be to place all of the care and caution touching negotiable paper upon the taker rather than upon the maker, thus reversing not only the theory of the law merchant, and the negotiable instruments act, but also the well known rule of equity that he who makes a loss possible should suffer the loss.

The judgment is affirmed.

MORRIS, C. J., MAIN, CROW, and FULLERTON, JJ., concur.