## BUTTERWORTH v. BEACH
### (No. 1048; June 26, 1923; 215 Pac. 1085.)

APPEAL AND ERROR—NEGOTIABLE INSTRUMENTS—COLLATERAL SECUR-
ITY—PLEDGEE OF NOTE NOT HOLDER IN DUE COURSE AFTER PAYMENT
OF PRINCIPAL DEBT—PLEDGEE OF NOTE AFTER MATURITY NOT
HOLDER IN DUE COURSE—EVIDENCE—PLEADINGS.

1. Where the court, believing that plaintiffs, in an action on
   a note, were holders in due course, excluded evidence of
   failure of consideration, the Supreme Court, on defend-
   ants' appeal, must view the case as though they had a
   complete defense to the note in the hands of payee or
   any one not having the rights of a holder in due course.
2. Persons acquiring a note after maturity cannot claim that
   they were holders in due course under the Negotiable
   Instruments Law (Comp. St. 1920, Sec. 3985;) but, if
   the one from whom they derived title was a holder in due
   course at the time, they are entitled to the same rights
   under Sec. 3991.
3. Pledgee of a negotiable instrument is a holder in due
   course' only to the extent of his lien (Comp. St. 1920,
   Sec. 3960,) and hence ceases to be such when the prin-
   cipal indebtedness is paid, unless he has some other in-
   terest giving him such standing.
4. Neither a bank to which a note is pledged after maturity
   to secure an indebtedness, nor its transferee, has the
   rights of a holder in due course; the note in the hands
   of either being subject to the same defenses as if non-
   negotiable (Comp. St. 1920, Sec. 3991.)
5. The rule permitting a pledgee who continues to hold the
   pledge after the payment of the pledgor's debt to him to
   recover as a legal holder the amount due on the pledge,
   does not recognize the holder of the pledge as a holder
   in due course.

APPEAL from District Court, Weston County; H. P. ILS-
LEY, Judge.

Action by William Butterworth and another as trustees,
under the will of Charles H. Deere, deceased, against Cora
M. Beach and Alfred H. Beach. Judgment for plaintiffs
and defendants appeal. The material facts are stated in
the opinion.

*A. H. Beach* and *Raymond, LaFleiche & Kem* for appellants.

The general denial of appellants together with the allegations of failure of warranty and consideration put in issue the bona fides of the purchase of the note. (Hodgson v. Mather, 100 N. W. 87.) where the facts are peculiarly within the knowledge of one of the parties, slight evidence may suffice to shift the burden of proof to such party. (Rumley Co. v. Anderson, 150 N. W. 939.) Evidence of the exercise of ownership of notes claimed to have been transferred before maturity, or making statements in relation thereto, is admissible to overcome the presumption in favor of transfer before maturity, where it appears that assignor still retained possession after maturity. (Rumley Co. v. Anderson, supra.) This evidence was erroneously excluded; the court erred in excluding evidence of the failure of warranty and consideration; the court erred in excluding testimony as to the status of the note as collateral security, said evidence being material as to the question and time of transfer. (Daniels Neg. Inst. Vol. 1, Sec. 833.) Respondents could claim title to the note in question in due course, only by purchasing the indebtedness for which it was pledged as security. It was proposed to show that they never did this, but the evidence was excluded; The note in question was merely held as collateral; title to it could pass only by a transfer of the principal debt. (Munn v. McDonald, 10 Watts (Pa.) 270; the evidence showed that the debt for which the note in question was given as collateral, was paid at the time of the trial; the court erred in excluding testimony that the principal notes of which the note in question was collateral security, were not sold to respondent. An endorsee unable to specify the transaction with which the transfer of the note was connected, fails to establish himself as a holder in due course. (Carroll v. Peters, 1 McGloin, 88; the holder of collateral notes as security for notes that have been paid, is not a holder in due course. In re Philpot Estate, 151 N. W. 827; and defenses against it

can be made as if it were brought in the name of the party for whose benefit it was afterwards prosecuted. (Easter v. Minard, 26 Ill. 494. The judgment of the trial court should have been for appellants.

*H. Glen Kinsley* for respondent.

The Weston County Bank was a bona fide holder of the note acquired before its maturity; it was acquired as collateral to loans then made to Thoeming Com. Co.; it was not subject to defenses which the maker might have had by reason of transactions with the payee, (Genesee Bank v. Klindt, 7 Wyo. 321, 51 Pac. 878; 3958 C. S.) Plaintiffs purchased this note from the bank, thus acquiring the same position as bona fide holders, which the bank held. (8 C. J. 466; 3 R. C. L. 1036, 3991 C. S.) Having acquired title in due course, plaintiffs may sue the maker, regardless of whether the original note for which this note was given as collateral has been paid; the testimony shows that plaintiffs did purchase the principal note from the bank. Every holder is termed *prima facie* to be a holder in due course. The doctrine of judicial notice rests upon the wisdom and discretion of the courts. (23 C. J. 173) Courts will not take judicial notice of the name of a corporation. (Mobile v. Mackay, 158 Ala. 51; King Co. v. Bowen, 7 Ala. 462;) The court did not err in sustaining objections to the notice, no foundation therefor having been laid. The court properly excluded evidence offered as to a warranty on the sale of an automobile, for which the note was given, it having been shown that the note in suit had been acquired by plaintiff in due course. (Exchange Bank v. Coe, 95 Ark. 387; 127 S. W. 453, 31 L. R. A. (N. S.) 287.) The endorsement and delivery of negotiable paper as collateral before maturity, passes the legal title to the holder with power to collect by suit or otherwise, subject to the rights of the endorser as to the application of proceeds. (21 R. C. L. 668; Hall v. Page, 4 Ga. 428; Lamberton v. Windom, 12 Minn. 232, 90 Am. Dec. 301; Bank v. Cannon, 46 Minn. 95, 48 N. W. 526, 28 L. R. A. (N. S.) 980.) A bona fide holder

of a note as collateral, may enforce it without first resort-
ing to the original debtor; the liability of the maker being
primary and absolute. (Delaware Co. v. Haser, 199 Pa.
17, 85 A. S. R. 763, 48 Atl. 694; Jones, Pleg & Col. Secur.
2nd ed. Sec. 664; Hulett v. Bank, 106 N. W. 879, 3 R. C. L.
1062; Yellowstone Bank v. Ganon, 19 Mont. 402, 48 Pac.
762, 61 A. S. R. 620, 44 L. R. A. 243; Logan v. Cassell, 88
Pa. St. 288; Watkins v. Angotti, 65 W. V. 193.) The rule
applies where the note was endorsed to the pledgee, so that
payment of the debt while re-invested in the pledgor owner-
ship, left the legal title in the pledgee, (Sibley v. Robin-
son, 23 Me. 70; Banister v. Kenton, 46 Mo. App. 462; Bank
v. Rice, 149 App. Div. 18, 133 N. Y. S. 622.) There was no
variance between the allegations and the proof. (5860 C. S.)
There was no suggestion that appellants were misled to their
prejudice. An amendment might have been allowed after
trial. (C. B. & Q. v. Pollock, 16 Wyo. 321; Kuhn v. Mc-
Kay, 7 Wyo. 42.) There was no objection to the evidence
on the grounds of variance; (Lbr. Co. v. Bank, 22 Wyo.
310; Engen v. Olsen, 22 Wyo. 528.) The only showing
that appellants were misled by the pleadings and proof, is
the statement of the fact made by their counsel. The judg-
ment should be affirmed.

*A. H. Beach, Raymond & LaFleiche* in reply.

Respondents could secure legal title to the collateral note
only by purchasing the principal note, and evidence of such
purchase was material and the court erred in excluding it.
(Mecum v. McDonald, 10 Watts (Pa.) 270.) When the
principal note is paid, title to the collateral reverts to pledg-
or, the note in suit was not sold to the bank before matur-
ity, and it was not sold to respondent by the bank; the note
was a mere pledge, contingent upon payment of the prin-
cipal note. (Gillet v. Bank, 55 N. E. 293; Van Eman v.
Stanchfield, 13 Min. 80.) The bank had no authority to
sell the note, (21 R. C. L. 668; 31 Cyc. 839.)

KIMBALL, Justice.

This appeal is for review of a judgment for plaintiffs (respondents) in an action on a promissory note. The defendants (appellants) were the makers of the note which was dated May 12, 1915, for $1050, payable one year after date to the order of Thoeming Commercial Company, payee. In the petition the plaintiffs alleged, among other things, that they took the note from the payee for value before maturity in the regular course of business. The answer admitted the making of the note by the defendants, denied generally the other allegations of the petition, and alleged a total failure of the consideration for the note. Trial was had without a jury. The trial court, believing that the plaintiffs had the rights of holders in due course, refused to hear any evidence in support of the defense of failure of consideration, and we must, therefore, view the case as though the defendants have a complete defense to the note in the hands of the payee or any other person not having the rights of a holder in due course.

It was shown by the plaintiffs' evidence that they acquired the note, not from the payee before maturity, but from the Weston County Bank long after it was due. Having acquired the paper after its maturity, the plaintiffs were not in a position to claim that they were holders in due course as defined by the Negotiable Instruments Law (Wyo. C. S. 1920, § 3985,) but if the bank, from whom they derived their title, was a holder in due course at the time of the transfer, the plaintiffs were entitled to the same rights. C. S. § 3991. The important question, then, was whether the bank was a holder in due course when it transferred the note to plaintiffs. Upon this point, the plaintiffs introduced evidence tending to prove that the bank became the holder of the note in good faith before maturity as collateral to secure the payment of notes owed the bank by Thoeming Commercial Company, payee in the collateral note, and Thoeming Mercantile Company; that the plaintiffs, on August 16, 1917, bought all the ''Thoeming'' notes

then held by the bank and at the same time took over the note in suit as collateral to the notes so bought.

The witnesses who testified to these facts were not asked by plaintiffs to give details with respect to the pledge contract between the bank and Thoeming Commercial Company, nor to describe the principal indebtedness for which the note in suit was pledged. The president of the bank, who had testified for plaintiffs, was afterwards called as a witness for defendants, and then testified that the note in suit was pledged originally and before maturity as security for eight notes then held by the bank, six of which were made by Thoeming Commercial Company for various amounts aggregating about $1700, one by B. H. and L. C. Thoeming for $1100, and one by Thoeming Mercantile Company for $339, and that all of these eight notes had been paid before the trial. There is no direct evidence in the record to show more definitely when or how they were paid. However, as it appears that on August 16, 1917, the plaintiffs bought all Thoeming notes then held by the bank, the inference is that other Thoeming notes had been paid previously; and, as the bank on August 16 claimed to hold the note in suit as collateral only, it is to be inferred that it had not been sold or taken by the bank in payment of any part of the principal indebtedness for which it had been originally pledged, and that it was then held only as security for the notes sold to plaintiffs. The same witness testified that the ''Thoeming'' notes sold to plaintiffs were eight in number, one made by Thoeming Commercial Company for $476, dated May 10, 1913, and seven by Thoeming Brothers for various amounts, aggregating about $4400, none dated earlier than February, 1917. There was no evidence that the Thoeming Brothers indebtedness, evidenced by the seven notes last mentioned, originated prior to the maturity of the collateral note in question. It was stated rather casually that some of them were renewals, but there was no evidence to show the date or nature of the debts renewed by them. The same witness testified that any

collateral the bank "had from Thoeming was applied to any of the Thoeming indebtedness—Thoeming Mercantile Company, Thoeming Commercial Company and Thoeming Brothers," but there was no evidence that this was done pursuant to any pledge agreement with the Thoeming Commercial Company.

The defendants offered to prove that the note in suit was not received by the bank before its maturity as collateral to any of the notes sold by the bank to plaintiffs. Plaintiffs' objection to this offer was sustained, and this ruling is assigned as error. The theory upon which the objection was sustained, as announced by the trial judge, was, in effect, that the plaintiffs were entitled to the rights of holders in due course unless the defendants could prove that the note in suit was never in fact given to the bank as collateral security before maturity.

We cannot concur in this view, and think it cast too great a burden on defendants.

It may be conceded that the note in suit was pledged before maturity to the bank which then became a holder with a lien, and, therefore, a holder for value to the extent of the lien. C. S. 3960. No other element of a holder in due course being involved, the bank was then also a holder in due course to the same extent. However, it appears without contradiction from the evidence in the record that the principal indebtedness for which the note in suit was then held as collateral was paid, and if that were the only indebtedness involved, the bank thereafter could not have collected the collateral note from the defendants having a complete defense against the payee. A pledgee of a negotiable instrument is a holder in due course only to the extent of his lien. C. S. 3960, supra; Jones on Collateral Securities, (3rd Ed.) Sec. 674, 675; Daniel on Neg. Ins. (6th Ed.) Sec. 832a; Williams vs. Cheney, 3 Gray, (Mass.) 215; Easter v. Minard 26 Ill. 495; Yellowstone National Bank v. Gagnon, 19 Mont. 402; 48 Pac. 762, 44 L. R. A. 243, 16 Am. St. Rep. 520; Canadian etc. Bank v. Sesnon Co., 68

Wash. 434; 123 Pac. 602. When the principal indebtedness is paid the pledgee's lien is at an end, and thereafter he does not continue as a holder in due course of the pledge unless he has some other interest which gives him that standing.

The only other interest of the bank shown by the evidence was that of a holder of the instrument as a pledge to secure the indebtedness evidenced by the eight notes which the plaintiffs bought on August 16, 1917, and, of course, this was the only interest which the plaintiffs then acquired. In the absence of evidence to connect the notes bought by plaintiffs with the original indebtedness for which defendants' note was pledged before maturity, or to show the time when defendants' note was pledged to the bank for the indebtedness evidenced by the notes sold to plaintiffs, there was nothing to exclude the possibility that, as security for the latter indebtedness, defendants' note was received by the bank after its maturity. If that were established, neither the bank nor its transferee had the rights of a holder in due course, and the pledged note in the hands of either was subject to the same defenses as if it were non-negotiable. C. S. Sec. 3991.

Evidence material on this issue was excluded when the trial judge sustained the objection to defendants' offer and announced that no evidence along that line would be received unless the defendants proved that the note in suit was never given to the bank as collateral before maturity. In other words, it was then held that if the bank, as a pledgee before maturity, was a holder in due course, it continued as such even after the payment of the principal indebtedness. This cannot be true if, as we have said, a pledgee is a holder in due course only to the extent of his lien. On this point plaintiffs' counsel relies on cases holding that in a suit on a negotiable instrument by the pledgee against the maker the condition of the indebtedness from the pledgor to the pledgee, even its payment in full, is immaterial, and cites, among other cases, Logan v. Cassell, 88

Pa. St. 288; 32 Am. Rep. 453; Sibley v. Robinson, 23 Me. 70; Banister v. Kenton, 46 Mo. App. 462; Peoples Nat'l. Bank v. Rice, 149 App. Div. 18, 133 N. Y. Supp. 622. These cases, and others, tend to establish the principle that a pledgee who continues to hold the pledge after the payment of the pledgor's debt to him may, as a legal holder, recover the amount due from the maker to the pledgor, but they do not lend any support to the proposition that such a holder is a holder in due course.

We deem it unnecessary to discuss other specifications of error in the exclusion of evidence. Those upon which our opinion is not herein indicated raise questions which may be unimportant or presented in a different manner at another trial.

No question in regard to the sufficiency of the pleadings was raised before or at the trial, and no evidence was objected to on the ground that it constituted a variance or worked a surprise. The court and the parties assumed at the trial that the issues upon which evidence was taken were properly presented by the pleadings which we think were sufficient to support the judgment. Whether any pleading on proper challenge should have been amended in the trial court is a moot question which we need not decide.

For the error mentioned the judgment is reversed, and the cause remanded for a new trial.

*Reversed and Remanded.*

POTTER, Ch. J., and BLUME, J., concur.

NOTE—See under (1) Appeal and Error 4 C. J. 2667; (2-5) Bills and Notes 8 C. J. 685, 693 and 702.