AMERICAN COLONIAL BANK OF PORTO RICO, Plaintiff and Appellee, v. MARIO CAMACHO, Defendant and Appellant.

No. 3715.   Argued December 11, 1925.—Decided July 29, 1926.

*C. del Toro Fernández* for the appellant.   *Tomás Paz, Jr.,* for the appellee.

Mr. Justice Hutchison delivered the opinion of the court.

Defendant appeals from a judgment for the amount found to be due on a promissory note, and says:

"1. The district court erred in ignoring our demurrer to the complaint for want of a cause of action.

"2. The district court erred in overruling our motion to have the Crédito y Ahorro Popular of Yauco joined as an indispensable party in this suit, for the purpose of its final determination.

"3. The district court erred in its interpretation of the evidence, of the law, and of the doctrine applicable to the case.

"4. The district court erred in rendering a final judgment which is not supported by the evidence offered and admitted at the trial."

The demurrer was filed on October 6, 1923. The motion to bring in the Yauco bank as a new party and cross-defendant was made on October 26, 1923. An amended answer and cross-complaint dated November 12, 1923, were filed on or before November 16th when the motion to include the Yauco bank as a party was denied.

From the ruling last mentioned it appears that a demurrer to the original answer and cross-complaint and a motion by plaintiff for judgment on the pleadings were submitted together with defendant's motion. The court explains that it was not necessary to pass upon plaintiff's demurrer and motion for judgment for the reason that an amended answer and cross-complaint had been filed. Here defendant seems to have neglected an excellent opportunity to submit his demurrer to the complaint, together with his motion, and to ask that the demurrer be first or at least simultaneously disposed of.

The case was called for trial on January 20, 1925. Although at this time more than fifteen months had elapsed since the filing of the demurrer to the complaint, it did not occur to defendant to call the attention of the court to the matter, or to request a ruling upon the question so raised.

The theory of the demurrer, disclosed for the first time

in the brief for appellant, is that the complaint did not allege delivery of the note to plaintiff.

The complaint alleged the making of the note by defendant to the order of the Yauco bank, and indorsement thereof to plaintiff by the payee. If the averment as to indorsement "to" plaintiff be not enough to include the idea of delivery, then the omission complained of was cured both by the affirmative pleading of defendant and by the evidence adduced at the trial.

The court below could hardly be expected to take more interest in a timely decision of the question sought to be raised by defendant than defendant himself seems to have taken in the matter.

Other facts necessary to indicate the bearing of the second, third and fourth specifications of the assignment sufficiently appear from a statement filed by the trial judge from which we take the following extract:

"It is alleged that the said promissory note was executed for due cause and consideration; that several demands for payment had been made upon Mario Camacho, who had not paid the same in whole or in part; and that the amount thereof was due and owing.

"The defendant answered: That on May 20, 1922, Francisco Galarza owed to defendant the sum of twenty-five hundred seventy-two dollars and fifty cents, which was the amount of a loan and interest thereon at the monthly rate of one per cent; that to pay such obligation Galarza asked for and obtained a loan for an equal sum from the Crédito y Ahorro Popular de Yauco, represented by its treasurer and manager, Antonio Molini Ruiz, and, accordingly, an obligation was executed on that date in favor of said banking institution; that such obligation was delivered immediately to Antonio Molini Ruiz, as treasurer and manager of the Banco Popular de Yauco, the borrower having ordered him to retain the amount of the loan in order to deliver it to Mario Camacho in payment of the promissory note which had been executed by Francisco Galarza and his wife in favor of defendant; that Antonio Molini Ruiz, treasurer and manager of the Crédito y Ahorro Popular de Yauco, requested defendant to accept the $2,572.50, which had been placed at defendant's disposal by order of Francisco Galarza, subject to delivery of

882

the promissory note executed by Galarza and his wife; that accordingly defendant went to the Crédito y Ahorro Popular de Yauco, canceled the promissory note held by him and delivered it to Antonio Molini Ruiz and agreed with said Antonio Molini Ruiz, treasurer and manager of the Crédito y Ahorro Popular de Yauco, to leave, as he did leave, in said banking institution, the $2,572.50, in order to make use of that amount, in whole or in part, when he should deem fit; that from said deposit defendant withdrew several sums, and at the request of the treasurer and manager of the bank, the said Molini Ruiz, on each occasion defendant signed what Molini Ruiz told him was a receipt or record of the sum withdrawn, which document, when another amount was taken, was destroyed and substituted by a new one; that on June 16, 1922, defendant received from the Crédito y Ahorro Popular de Yauco a sum of money the amount of which he does not remember but which, with what he had taken before, amounted to $1,654.85, and, as usual, the treasurer and manager, Antonio Molini Ruiz, took up the record or receipt covering a period up to that date and requested defendant to sign another receipt for the said sum of $1,654.85, which receipt Molini, as treasurer and manager of the bank, had prepared, and defendant signed it in good faith and without having read it because he did not know how to do so correctly, but relied on the good opinion which he had formed of Molini and on the honor that is always supposed to be possessed by a person selected to discharge the duties of a responsible position; that subsequently defendant saw the document which he had signed on June 16, 1922, in favor of the Crédito y Ahorro Popular de Yauco, in the hands of Emilio Totti Ruelle, agent of the American Colonial Bank of Porto Rico, and with real surprise found that he had signed a document foreign to his purpose, to his will and to the facts, changing his position from that of a creditor of the Crédito y Ahorro Popular de Yauco for the sum of $917.65 (which was the balance of his deposit of $2,572.50) to that of a debtor of that bank for the amount of $1,654.85; that neither on June 16, 1922, nor on any other date did defendant transact business in the sum of $1,654.85 with the Crédito y Ahorro Popular de Yauco, nor has he ever been indebted under any circumstances to such bank for said amount or for any part thereof; that toward the end of 1922 the American Colonial Bank of Porto Rico made a loan of $7,500 to the Crédito y Ahorro Popular de Yauco and required col-

lateral security at the rate of two to one, as well as the signature of two of the directors of the Yauco bank; that, accordingly, the Crédito y Ahorro Popular de Yauco delivered to the American Colonial Bank of Porto Rico securities to the amount of $15,000, in addition to the signatures of the two directors; that, before bringing this action, plaintiff had not exhausted the property and assets of the Crédito y Ahorro Popular de Yauco which amount to more than the $15,000 owing to plaintiff; that defendant has an authentic communication in writing from plaintiff wherein the latter voluntarily acknowledges.that the document signed by defendant was delivered to plaintiff as collateral security and not as a direct and absolute assignment or transfer of ownership; and that defendant has always set forth these reasons whenever payment was demanded of him.

"The defendant has also filed a cross-complaint praying that the first complaint be dismissed; that the obligation signed by defendant on June 16, 1922, in favor of the Crédito y Ahorro Popular de Yauco, due November 16, 1922, and later negotiated as collateral security to the American Colonial Bank of Porto Rico, be declared null and void; and that defendant and cross-complainant be adjudged to have and recover from the Crédito y Ahorro Popular de Yauco the sum of $917.65, plus the legal interest and costs.

"The case was tried before this district court on January 20, 1925, the plaintiff appearing by its attorney, Tomás Paz, and the defendant by his attorney, Carlos del Toro Fernández.

"Both parties introduced oral and documentary evidence and the case was submitted by briefs.

"The court finds that the note in question was agreed to and executed by defendant in favor of the Crédito y Ahorro Popular de Yauco for a purpose and for a good consideration and that this document was indorsed in favor of plaintiff.

"The averment of the cross-complaint as to the Crédito y Ahorro Popular de Yauco having been stricken by the order of January 26, 1924, it becomes unnecesary now to consider that aspect of the case."

The second proposition relied upon by appellant assumes, without attempting to show, that the holder of commercial paper, pledged by the payee as collateral security for a loan contracted at the date of indorsement and delivery, stands in the shoes of the payee. In the absence of

any citation of authority by appellant we are unable to concur in this view. Plaintiff as an innocent holder 'for value had no interest in defendant's dealings or business relations with the payee nor was plaintiff's right to recover subject to any special defense, offset or counter-claim available to defendant as against the payee in an action brought by it. 21 R.C.L. 670, par. 32; 8 C. J. 846, par. 1107.

Section 67 of our Code of Civil Procedure provides that—

"Persons severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, and sureties on the same or separate instruments, may all or any of them be included in the same action, at the option of the plaintiff."

A similar provision was construed in *Johnson* v. *Cullman*, 221 Pac. Rep. 732.

The cross-complaint adopts by reference the affirmative matter contained in the answer as outlined by the trial judge, *supra,* and in addition thereto alleges that the Yauco bank upon the day following a demand made by cross-complainant for payment of the claim asserted by him, closed its doors for a time and, on reopening its place of business under a new management, refused to pay the amount so claimed.

Neither in the answer nor in the cross-complaint is to be found any intimation that the Camacho note was pledged to secure any part or portion susceptible of identication or otherwise distinguishable from the whole of the loan obtained from plaintiff by the Yauco bank.

The bare statement that plaintiff held other collateral amounting in the aggregate to a sum approximately double the amount due from the pledger to plaintiff, and that plaintiff had not first exhausted its resources in this regard or resorted to its remedy against the directors of the Yauco institution, obviously does not suffice to bring the instant case within the doctrine of *Yellowstone National Bank* v. *Gaynon,* 44 L.R.A. 243, note, and cases there cited, or others referred to in note to *Bedell* v. *Herring,* 11 Am. St. Rep. 307,

321. See also note to *Hulett* v. *Marine Savings Bank,* 4 L.R.A. (N. S.) 1042.

That the answer and cross-complaint did not proceed upon the theory of an attempt on the part of plaintiff to recover an amount in excess of the indebtedness for the security of which the Camacho note had been pledged is further evinced by the fact that the rule recognized in the *Yellowstone National Bank* v. *Gaynon* and other cases, *supra,* is not invoked in the brief for appellant.

A majority of this court are quite clear that the Yauco bank was not a necessary party and that the refusal to permit that institution to be brought in as a cross-defendant was not reversible error. Upon this point the writer is inclined to dissent for reasons not relied upon by appellant or at least not discussed in the brief, and which therefore need not be elaborated at this time.

It is of course not incumbent upon this court to investigate upon its own initiative more or less doubtful questions with a view to possible reversal upon some theory of its own and without notice to appellee.

A somewhat more plausible suggestion is made by appellant in the argument under the third and fourth propositions submitted in the assignment to the effect that under the provisions of article 463 of the Code of Commerce an undated indorsement does not transfer the title but is presumed to be for the purpose of collection. We have heretofore held, however, that this is at most a rebuttable presumption and that the fact may be shown by evidence *aliunde.* *Noriega & Alvarez* v. *Cruz & Co., Ltd.,* decided July 14, 1924, 33 P.R.R. 530. See also decision of the Supreme Court of Spain of February 4, 1898, cited by appellee.

If this point had been raised by the pleadings before the presentation of defendant's motion, *supra,* a different ruling might have been obtained from the district judge. But the evidence shows that the indorsement in question was made immediately upon completion of the negotiations for the

loan for the security of which the collateral in question was pledged. The fact is uncontroverted. Plaintiff before resting asked leave to amend the complaint so as to allege an indorsement "in blank and for due cause and consideration" to plaintiff. No objection was made to this suggestion at the time and the question as to the validity of an undated indorsement in blank seems to have occurred to defendant as an afterthought.

Another question goes to the competency of certain books of account kept by the Yauco bank and introduced in evidence but not authenticated by the municipal judge. This point also has been passed upon and determined adversely to the contention of appellant by this court. See *American Tobacco Company* v. *Canel*, 32 P.R.R. 509.

Taking the view of the case most favorable to appellant under the pleadings and in the absence of the payee as a party, the issue may be said to have been whether or not defendant knew that he was signing a note and whether or not there was any consideration whatever therefor at the time. Viewing the evidence from this standpoint, we are constrained to hold that there was no such manifest error in the weighing thereof as to require a reversal.

The judgment appealed from must be affirmed.